GOVERNMENT OF THE VIRGIN ISLANDS

v.

SALVADOR SANTIAGO ORTIZ, JR., Appellant

No. 18193

United States Court of Appeals

Third Circuit

Argued January 28, 1970

Decided June 9, 1970

ALEXANDER A. FARRELLY, ESQ. (BIRCH, DEJONGH & FARRELLY), St. Thomas, Virgin Islands, *for appellant*

ROBERT M. CARNEY, ESQ., United States Attorney, VINCENT A. COLIANNI, ESQ., St. Thomas, Virgin Islands, *for appellee*

Before HASTIE, *Chief Judge*, and GANEY and STAHL,[*] *Circuit Judges*

OPINION OF THE COURT

HASTIE, *Chief Judge*

---

[*] Judge Stahl heard the argument and participated in the consideration of this appeal but died before decision.

The appellant Ortiz is being held without bail under an information filed by the United States Attorney in the District Court of the Virgin Islands charging Ortiz with first degree murder under section 922 (a) (1) of Title 14 of the Virgin Islands Code. After the information issued, Ortiz petitioned for a writ of habeas corpus on the ground that his arrest in Puerto Rico and return to the Virgin Islands were illegal. At the hearing on his petition, he also argued that the district court was required to set bail in accordance with the Bail Reform Act of 1966, 18 U.S.C. §§ 3416–52* (Supp. IV, 1969). The district court refused to issue the writ or to set bail, and Ortiz has appealed.

The victim of the alleged murder died of gunshot wounds inflicted on July 8, 1967 in St. Croix. The evidence developed at the habeas corpus hearing showed that Ortiz was implicated in the crime by statements taken from two alleged accomplices nearly two years later. At that time, Ortiz was living with his father in Puerto Rico. Two F.B.I. agents arrested him there and took him to La Princessa jail in San Juan. The next day, two Virgin Islands detectives removed Ortiz from La Princessa jail and took him to the Virgin Islands without a warrant and, so far as appears from the record, without extradition or removal proceedings of any kind. Ortiz was taken before a municipal court judge in St. Croix and held on a complaint for first degree murder. Before a preliminary hearing was held, the United States Attorney filed an information in the district court charging Ortiz with the same crime. He is now held for trial on that information.

At the habeas corpus hearing, Ortiz indicated in response to questions posed by the court that he had submitted to arrest and removal from Puerto Rico in order

* So in original. Probably should read "3146".

to comply with the wishes of his father, who is a bodyguard for the Governor of Puerto Rico:

"Q. All right, did you at any time tell them that you didn't want to come back to St. Croix? Did you protest being taken back here?

A. No, sir.

Q. You did what they told you to do?

A. I must do what my father told me to do. Father is the law."

The government presented no evidence, and the district court made no finding, on the legality of the arrest and removal.[1] However, the district court found that Ortiz had returned to the Virgin Islands voluntarily, "in the sense that he did not express opposition to returning . . . ." Although there is some evidence that Ortiz did not consent to his return to the Virgin Islands, the district court's finding is not clearly erroneous. Moreover, even if Ortiz had been illegally arrested and forcibly brought within the jurisdiction, there are decisions of the United States Supreme Court which support the proposition that his detention and trial thereafter under a valid information would violate no constitutional guarantee. See Frisbie v. Collins, 1952, 342 U.S. 519; Mahon v. Justice, 1888, 127 U.S. 700; Ker v. Illinois, 1886, 119 U.S. 436.[2]

---

[1] See 18 U.S.C. § 3182 (1964) (extradition); 18 U.S.C. § 1073 (1964) (flight to avoid prosecution); Fed. R. Crim. P. 40 (removal). See generally 8A J. Moore, Federal Practice ¶ 40.05 (2d ed. 1965).

[2] We recognize that the validity of the Frisbie doctrine has been seriously questioned because it condones illegal police conduct. See Allen, Due Process and State Criminal Procedures: Another Look, 1953, 48 Nw. U.L. Rev. 16, 27–28; Pitler, "The Fruit of the Poisonous Tree Revisited and Shepardized" 1968, 56 Calif. L. Rev. 579, 600; The Supreme Court, 1952 Term, 1953, 67 Harv. L. Rev. 89, 127. We also recognize that the Supreme Court cases cited in the text dealt with state prosecutions, rather than federal or territorial proceedings, and that the federal courts can impose higher standards of conduct on federal or territorial law enforcement officers through the exercise of supervisory power. See Scott, Criminal Jurisdiction of a State over a Defendant Based upon Presence Secured by Force or Fraud, 1953, 37 Minn. L. Rev. 91, 100 & n. 40. However, it is not necessary to decide whether the Frisbie doctrine immunized the misconduct of other than state officers because the evidence here is conflicting on the circumstances of the arrest and removal and the district court found that the accused returned to the jurisdiction voluntarily.

At the hearing on his petition for a writ of habeas corpus, Ortiz urged the district court to set bail in accordance with the Bail Reform Act of 1966. Since first degree murder is not punishable by death in the Virgin Islands,[3] application of the Bail Reform Act would have required the district court to release Ortiz on such conditions as reasonably would have assured his appearance at trial. 18 U.S.C. § 3146 (Supp. IV, 1969). However, the government took the position that the Bail Reform Act should not apply when it conflicts with the bail provision contained in section 3 of the Revised Organic Act, 48 U.S.C. § 1561 (1964):

". . .
All persons shall be bailable by sufficient sureties in the case of criminal offenses, except for first-degree murder or any capital offense when the proof is evident or the presumption great.
. . ."

The district court denied bail in apparent reliance on this provision of the Revised Organic Act.[4]

On this appeal, the government argues that the action of the district court was proper because the Bail Reform Act has been rendered inapplicable to the Virgin Islands by the "reenactment" in 1968 of 48 U.S.C. § 1561, including the bail provision, and by the addition of a clause repealing "[a]ll laws . . . inconsistent with the provisions of this subsection . . . ." Virgin Islands Elective Governor

---

[3] 14 V.I.C. § 923(a) (1964).

[4] Although the district court stated that it would deny bail even under the Bail Reform Act, the district court failed to consider the condition specified in section 3146, and the district court's language indicates that it relied at least in part on the test in the Revised Organic Act, namely, whether the proof is evident or the presumption great. The district court made the following statement of its reasons for denying bail:
"Even applying the Bail Reform Act, I would decline bail in this case because the murder was a particularly cold-blooded, brutal and senseless one; and the proof is pretty evident and the presumption pretty great as was developed in the hearing in writs for habeas corpus.
Further, in the light of the probability or the certainty that a conviction will result in a mandatory life sentence in this case, I think it highly probable that any of these defendants would flee, flee further prosecution. So on the basis of those findings, I will decline bail."

Act § 11, 48 U.S.C. § 1561 (Supp. IV, 1969). The government would have us read "subsection" in the repealer clause of amended section 1561 to mean "section," so that the repealer would operate on laws inconsistent with all parts of section 1561. Ortiz, on the other hand, argues that the word "subsection" in the repealer clause refers only to the new paragraph added immediately before the repealer clause, extending certain provisions and amendments of the United States Constitution to the Virgin Islands. Under this view, the express repealer would have no effect on the "reenacted" bail provision of section 1561.

█ We think that Ortiz has construed the statute correctly. To begin with, section 1561 was not "reenacted" in 1968, as the government contends. The last two paragraphs of 48 U.S.C. § 1561 (Supp. IV, 1969) including only the constitutional provisions and the repealer clause, were added in 1968 by the Virgin Islands Elective Governor Act, Pub. L. No. 90–496, § 11, 82 Stat. 841. But the bail provision of section 1561 long antedated both that statute and the Bail Reform Act and was neither altered nor restated in 1968.[5] The probable purpose of the repealer clause was to insure that the statutory extension of constitutional safeguards to the Virgin Islands would not be nullified by existing laws in conflict with them.[6] This legislative intent would have been clearer if the repealer clause had referred to "all laws inconsistent with the preceding

---

[5] The enacting clause reveals the limited scope of the amendment to section 1561:
    "Sec. 11. Effective on the date of enactment of this Act, section 3 of the Revised Organic Act of the Virgin Islands (68 Stat. 497; 48 U.S.C. 1561) is amended by adding at the end thereof the following new paragraphs: [constitutional provisions and repealer clause]."
Pub. L. No. 90–496, § 11, 82 Stat. 841. The reprinting of both the amendment and the previous text of section 1561 in the United States Code, Supp. IV, 1969, does not constitute reenactment.

[6] The legislative history of the 1968 amendment to section 3 of the Revised Organic Act, 48 U.S.C. § 1561 (Supp. IV, 1969), sheds no light on the purpose of the repealer clause.

paragraph." The word "subsection" probably was used inconsiderately in the process of making the Virgin Islands amendment conform with a virtually identical amendment of the Organic Act of Guam that was introduced, considered and enacted contemporaneously. Cf. Guam Elective Governor Act, Pub. L. No. 90–497, § 10, 82 Stat. 847.[7]

The Guam amendment extends the same constitutional provisions and amendments to that territory that are extended to the Virgin Islands, and contains the same repealer clause. However, in the Guam amendment the constitutional provisions and the repealer clause are designated as a single subsection "u", and are added to a section of the Organic Act of Guam which, unlike 48 U.S.C. § 1561, is divided into subsections. See 48 U.S.C. § 1421b (1964) and 48 U.S.C. § 1421b (Supp. IV, 1969). Apparently overlooking this formal difference, Congress used "subsection" in both enactments, not noticing that "preceding paragraph" would have been more accurate in the Virgin Islands amendment. Thus, it appears that Congress intended, as we now hold, that the repealer clause in the amendment to section 1561 should apply only to laws inconsistent with the constitutional provisions extended to the Virgin Islands by the same amendment, and not to laws inconsistent with other antecedent provisions of section 1561.[8]

█ Having decided that amended section 1561 does not repeal the Bail Reform Act insofar as it applies to first

---

[7] The bills that became the Guam Elective Governor Act (S.449) and the Virgin Islands Elective Governor Act (S.450) were companion bills introduced by Senators Jackson and Burdick. Similar bills, H.R. 7329 and 7330, were introduced in the House by Congressman Carey, and incorporated into the Senate bills before passage. Both the Guam bill and the Virgin Islands bill were proposed by the Department of the Interior and considered, amended, and recommended by the Committees on Interior and Insular Affairs.

[8] An editorial footnote to the word "subsection" in 48 U.S.C. § 1561 (Supp. IV, 1969) reads as follows: "So in original. Probably should be "section'." Under the analysis in the body of the opinion, this editorial footnote is erroneous.

degree murder cases in the Virgin Islands, we now proceed in somewhat reverse logical order to determine whether the Bail Reform Act applies at all. The government tacitly assumed both in the district court and on this appeal that, except for the possible conflict discussed above, the Bail Reform Act would apply to this case. However, we have some difficulty with this assumption. Section 3(a) of the Bail Reform Act of 1966, 18 U.S.C. § 3146(a) (Supp. IV, 1969) provides:

"Any person charged with an offense, other than an offense punishable by death, shall, at his appearance before a judicial officer, be ordered released pending trial [on certain conditions]."

Under the definition applicable to section 3146,

"The term 'judicial officer' means . . . any person or court authorized pursuant to . . . the Federal Rules of Criminal Procedure, to bail or otherwise release a person before trial. . . ."

18 U.S.C. § 3152(1) (Supp. IV, 1969). The District Court of the Virgin Islands comes within this definition because the Federal Rules of Criminal Procedure, including Rule 46 relating to bail, "apply to all criminal proceedings in . . . the District Court of the Virgin Islands . . . ." Fed. R. Crim. P. 54(a)(1).[9]

However, the term "offense" in section 3146 is defined as

"any criminal offense . . . which is in violation of an Act of Congress and is triable in any court established by Act of Congress."

18 U.S.C. § 3152(2) (Supp. IV, 1969). Although the offense of first degree murder under 14 V.I.C. § 922(a)(1) (1964) is "triable in [a] court established by Act of Congress"

---

[9] The enabling act under which the rules were promulgated contained specific authorization for application of the rules to the Virgin Islands. Act of June 29, 1940, ch. 445, 54 Stat. 688 (now 18 U.S.C. § 3771 (Supp. IV, 1969)). In Virgin Islands v. Solis, 3d Cir. 1964, 334 F.2d 517, 519, we held that under Rule 54(a)(1) the Federal Rules of Criminal Procedure apply "to all criminal proceedings in the District Court of the Virgin Islands, whether the crime is proscribed by local or Federal law."

because the district court has jurisdiction under 48 U.S.C. §§ 1612-13 (1964), the offense is not "in violation of an Act of Congress" because the crime was created by an act of the Virgin Islands legislature. As this court has pointed out in another context, "The local laws enacted under the legislative power granted by Congress are . . . territorial laws, not laws of the United States." Harris v. Boreham, 3d Cir. 1956, 233 F.2d 110, 113.[10]

Thus the Bail Reform Act does not by its own terms apply to cases where the offense charged is a violation of the Virgin Islands Code. Although counsel for the appellant assures us that the Act "is consistently being invoked in the District Court of the Virgin Islands" we find only one reported case in which it has been applied to a local offense in the Virgin Islands. In Virgin Islands v. Callwood, D.V.I. 1969, 7 V.I. 151, 296 F.Supp. 943, Judge Higginbotham, sitting by designation, applied the Bail Reform Act in denying a motion for bail pending appeal from a robbery conviction, but so far as appears from the opinion, the applicability of the Act was not raised as an issue for the court to consider.

The legislative history of the Bail Reform Act does not disclose any intent to apply the Act beyond the limits imposed by 18 U.S.C. § 3152 (Supp. IV, 1969). On the other hand, the legislative history does not indicate that Congress considered the problem of bail in the territories and decided to exclude territorial offenses from the purview of the Bail Reform Act. In fact it might be reasonable to hold that Congress intended such a major reform

---

[10] Harris v. Boreham involved the applicability of the Federal Tort Claims Act to a civil action for damages against a Virgin Islands Municipality. In the part of the case most pertinent at present, this court specifically rejected the reasoning in Mafnas v. Guam, 9th Cir. 1955, 228 F.2d 283, that the crime of involuntary manslaughter under Guamanian law violated a law of the United States because existing territorial legislation was continued in force by the Organic Act of Guam. Harris v. Boreham, 3d Cir. 1956, 233 F.2d 110, 113 n. 4.

in federal bail procedures to apply to all situations in which Congress has the power to regulate bail, including the trial of territorial offenses in the District Court of the Virgin Islands, if it were not for the apparent obstacle presented in cases of first degree murder by the bail provision of the Revised Organic Act.

■ ■ However, that obstacle was removed before passage of the Bail Reform Act by Rule 46(a)(1) of the Federal Rules of Criminal Procedure. Rule 46(a)(1) requires that "[a] person arrested for an offense not punishable by death shall be admitted to bail," and has the effect of making first degree murder under Virgin Islands law a bailable offense because it is not "punishable by death." As already noted, the Federal Rules of Criminal Procedure apply by their own terms to the trial of all criminal offenses in the District Court of the Virgin Islands.[11] More importantly, Congress provided in the enabling act that "all laws in conflict therewith shall be of no further force and effect." Act of June 29, 1940, ch. 445, 54 Stat. 688 (now 18 U.S.C. § 3771 (Supp. IV, 1969)). By the force of this legislation, Rule 46(a)(1) superseded the bail provision of section 3 of the Revised Organic Act, 48 U.S.C. § 1561 (1964), and created a right to bail before trial for first degree murder charged under territorial law in the District Court of the Virgin Islands. Cf. Mafnas v. Guam, 9th Cir. 1955, 228 F.2d 283, 285.

■ Under these circumstances, we think that, if Congress had adverted to the situation, Congress would have included first degree murder and other territorial crimes tried in the District Court of the Virgin Islands within the definition of "offense" in the Bail Reform Act, 18

---

[11] See footnote 9 supra and accompanying text.

U.S.C. § 3152(2) (Supp. IV, 1969).[12] Accordingly, even in the absence of a specific congressional mandate, we think it is proper and sensible that in the District Court of the Virgin Islands the right to pretrial bail conferred by Rule 46(a)(1) shall be determined and administered in accordance and the provisions and procedures of the Bail Reform Act. For "the Rule and the Act are complementary and form a unified system for dealing with pretrial release." Brown v. United States, 5th Cir. 1969, 410 F.2d 212, 215–16, quoting at 216.

These considerations make it appropriate that we utilize our supervisory power to require that the standards and procedures of the Bail Reform Act be adopted and followed in the consideration and disposition of bail applications in the District Court of the Virgin Islands. Cf. Virgin Islands v. Lovell, 3d Cir. 1967, 6 V.I. 422, 378 F.2d 799, 805. We note that on March 3, 1970, the perceptive judge of the district court achieved the same result for the municipal courts of the Virgin Islands that we reach for the district court by exercising his rule-making power under 48 U.S.C. § 1613 (1964) to prescribe that decisions as to release on bail prior to trial in municipal court shall "be guided by . . . the appropriate provisions of 'The Bail Reform Act' . . . ."[13]

The judgment of the district court denying appellant's petition for a writ of habeas corpus will be affirmed, but the case will be remanded to the district court for a hearing on bail under the Bail Reform Act of 1966.

---

[12] It was recognized in the congressional debates on the Bail Reform Act that if capital punishment were abolished, the conditions of pretrial release specified in section 3146 would be applied to accused murderers and others previously subject to the penalty of death. 112 Cong. Rec. 12490 (1966).

[13] In view of his order of March 3d, we feel confident that even without our decision here, the judge of the District Court of the Virgin Islands, who was not the presiding judge at the hearing in the present case, would reach the same conclusion in future cases that we do here.