UNITED STATES of America

v.

**Etienne GEORGE, Appellant.**

No. 79–2082.

United States Court of Appeals, Third Circuit.

Argued April 21, 1980.

Decided June 26, 1980.

---

Adams, Circuit Judge, filed opinion concurring in the judgment in part and dissenting in part.

Judith L. Bourne, Asst. Federal Public Defender, St. Thomas, Charlotte Amalie, V.I., argued for appellant.

Ishmael A. Meyers, U. S. Atty., St. Thomas, Charlotte Amalie, V.I., with whom James S. Carroll, III, Asst. U. S. Atty., St. Thomas, V.I., was on the brief, for appellee.

Before ADAMS, MARIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

A jury having found Etienne George guilty of escape from the custody of an officer or employee of the United States in violation of 18 U.S.C. § 751(a), and threatening an officer of a court of the United States in violation of 18 U.S.C. § 1503, the district court adjudged him guilty as charged in the information and sentenced him to two years imprisonment on each count, the two terms of imprisonment to be served concurrently. He appeals.

At the time the federal charges under 18 U.S.C. §§ 751(a) and 1503 were filed against George, he was free on bail pending trial in the district court on local felony charges lodged against him by the government of the Virgin Islands. On September 29, 1978, he had been released on bail by a judge of the territorial court. One of the conditions of his release, stated in the judge's order, was that he "report to the U. S. Marshal each and every Wednesday morning at 8:30 a. m."

At his arraignment before a magistrate in the district court on the local charges against him, George was again ordered to report weekly to the marshal's office.

On November 20, 1978, Chief Judge Christian of the district court entered a general order directing in relevant part that ". . . all persons accused of criminal offenses in the District Court of the Virgin Islands shall report to the Office of the United States Marshal at 8:30 a. m. on Wednesday of each week, if any such defendant is not in custody . . ." The order further directed that ". . . should any accused fail to report to the Marshal for two consecutive weeks, this Order will serve as authority to the United States Marshal to arrest any such person and bring that person before the Court."

On March 8, 1979, pursuant to the district court's order of November 20, 1978, Deputy United States Marshal Richard Dade placed George under arrest for having failed to report to the United States marshal's office for two consecutive weeks. As a matter of fact, he had not so reported since November 1978. On the basis of George's actions at the time of this arrest, the United States attorney filed the two-count information charging George with the federal crimes, from his conviction of which he now appeals.

With respect to his conviction on the first count for escape from lawful custody under 18 U.S.C. § 751(a), George questions the sufficiency of the evidence that his arrest by Dade was lawful and the sufficiency of

the evidence that he had an intent to escape custody and contends that the trial judge's instructions to the jury on the issues of the lawfulness of the arrest and the existence of the necessary intent and certain other instructions constitute reversible error. As to his conviction on the second count for threats against an officer of a court of the United States under 18 U.S.C. § 1503, George questions the applicability of § 1503 to threats against an officer of the District Court of the Virgin Islands and the applicability of § 1503 to George's conduct.

Before we consider the legal issues presented by the appeal, however, we should place them in the context of the circumstances of George's arrest. We are mindful that the evidence must be viewed, on this appeal, in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Government of Virgin Islands v. Gereau*, 11 V.I. 265, 293, 502 F.2d 914, 930–931 (1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975). Viewed in this light, the evidence disclosed the following facts.

Prior to arresting George on March 8, 1979, Dade had knowledge of the district court's order of November 20, 1978, and of George's violation of the order and the conditions of his bail. In fact, George had not reported to the marshal's office since November 1978. Moreover, at the commencement of the trial, the defense stipulated that for at least two consecutive weeks prior to his arrest George had failed to report to the marshal's office and further stipulated that the district court's order of November 20, 1978, was authority for Deputy Marshal Dade to arrest George.

On March 8, 1979, Dade was driving a marshal's van and carrying a subpoena ordering George to appear in court the following Monday when he saw George walking in the vicinity of his van and beckoned to him to approach the van. George, however, continued on his way. Dade parked the van and ran after George calling to him to stop, that he was under arrest. George said he wanted to know for what. Dade told him,

"For not coming in and signing our book." But George refused to go with Dade and after a little tussle Dade got George into his van. George said he would jump out and Dade told him that if he did, there would be escape charges against him and he would shoot him. George, nonetheless, did jump out of the van and ran down the street. Dade fired a shot in the air and George ran around behind a building and reappeared on the other side of it where there was a fence between him and Dade. George then said, "Man, what are you trying to do to me." He refused to come over the fence, started cursing and told Dade he would kill him and his family. At that point another deputy marshal and a police officer arrived and persuaded George to climb over the fence. He was then handcuffed and taken to police headquarters at Fort Christian.

Having thus summarized the circumstances of the appellant's arrest, we now consider the legal issues raised by his conviction and we first take up the issues relative to his conviction on the first count, that founded on 18 U.S.C. § 751(a). That Section provides in relevant part:

"Whoever escapes or attempts to escape . . . *from the custody of an officer or employee of the United States pursuant to lawful arrest*, shall, if the custody . . . is by virtue of an arrest on a charge of felony . . . be fined not more than $5,000 or imprisoned not more than five years, or both. . . ."

■ The escape contemplated under the statute is from the custody of an officer or employee of the United States. There can be no question but that Dade, a deputy United States marshal for the Virgin Islands at the time he arrested George, from whose custody George allegedly escaped, was an employee, if not an officer, of the United States. *See* 48 U.S.C.A. § 1614(c) and 28 U.S.C. §§ 561–575.

Before discussing the question of the lawfulness of Dade's arrest of George, however, we must satisfy ourselves that the arrest was "on a charge of felony". Dade arrested George for failing to report to the

marshal's office, a condition of his release on bail, under the authority of the Bail Reform Act of 1966, 18 U.S.C. §§ 3146–3156. That Act provides that the penalty for willfully failing "to appear before any court or judicial officer as required" shall be a forfeiture of any security given or pledged for the defendant's release and, "if he was released in connection with a charge of felony," a fine of not more than $5,000 or imprisonment of not more than five years, or both. Since George had been released on bail in connection with felony charges, any willful failure on his part "to appear before any court or judicial officer as required" would constitute a felony, for an offense punishable by imprisonment for a term exceeding one year is a felony, 18 U.S.C. § 1, and the Bail Reform Act would permit the imposition of a prison term of up to five years.

A United States marshal is not a "judicial officer" as that term is defined under the Bail Reform Act, 18 U.S.C. § 3156(a)(1). However, where the court requires a defendant, whom the court has released under the provisions of the Act, to report to the United States marshal as a condition of the defendant's release, the court, which has continuing jurisdiction over the defendant, has, in legal effect, designated the marshal as an agent of the court and the defendant's failure to report as required to the marshal is a failure to appear before the court for purposes of the Act. *See United States v. Harris*, 544 F.2d 947 (8th Cir. 1976), and the cases cited therein at page 949.

Since George had been released in connection with felony charges and had failed to appear before the "court", i. e., its agent, the United States marshal, as required, he was subject to arrest on felony charges pursuant to the Bail Reform Act. His arrest by Dade, therefore, was "an arrest on a charge of felony" under the federal escape statute, 18 U.S.C. § 751(c).

With respect to the lawfulness of the arrest, it was made under the authority of the district court's order of November 20, 1978. The order was authorized under the Bail Reform Act which in the exercise of our supervisory powers we have made applicable to all criminal defendants in the District Court of the Virgin Islands. *Government of Virgin Islands v. Ortiz*, 427 F.2d 1043 (3d Cir. 1970). The Act provides not only sanctions, as we have indicated above, for violations of whatever conditions of release the court may impose but also contemplates the arrest of any person violating such conditions. 18 U.S.C. § 3146(c).

Dade's authority to make the arrest was conceded below and is not now contested. Our brother Adams, however, asserts in dissent that the arrest must nonetheless be held to be unlawful because a formal warrant for George's arrest was not issued. We do not agree. In the first place, it is clear that the parties regarded as ample authority for the arrest Chief Judge Christian's order of November 20, 1978, that "should any accused fail to report to the Marshal for two consecutive weeks, this order will serve as authority to the United States Marshal to arrest any such person and bring that person before the Court." For George stipulated at the trial that the district court's order of November 20, 1978, was authority for Deputy Marshal Dade to arrest George and Dade's authority to do so has not been contested by George in this court.

The statute provides that the judicial officer authorizing the release of a person "shall issue an appropriate order containing a statement of the conditions imposed, if any, shall inform such person of the penalties applicable to violations of the conditions of his release and shall advise him that a warrant for his arrest will be issued immediately upon any such violation." 18 U.S.C. § 3146(c). We do not regard this rather oblique reference to a warrant as a statutory mandate that a formal warrant must issue in all such cases in order to validate the arrest. Rather we think its thrust is to inform the person that violations of the conditions of his release will subject him to arrest. Certainly it is the prospect of return to detention which is of concern to him, not the manner in which it will be effected.

At common law a peace officer was permitted to arrest without warrant for a felony committed in his presence or which he had probable cause to believe had been committed although not in his presence. This rule when applied to arrests made in a public place is not inconsistent with the Fourth Amendment, *United States v. Watson,* 423 U.S. 411, 418–419, 96 S.Ct. 820, 825–826, 46 L.Ed.2d 598 (1976). Indeed, even in cases where an arrest warrant has actually been issued, the arresting officer is not required to have it in his possession. Rule 4(d)(3). F.R.Crim.P.; *United States v. Smith,* 468 F.2d 381, 382–383 (3d Cir. 1972). In the present case, cause for the arrest of George' for a felony was not merely probable, it was a matter of public record in the marshal's office. For George had failed for many weeks to appear there and sign the marshal's book, which was a direct violation of the terms of his release. Both Dade and George knew of this violation, which was the felony for which George was being arrested. Dade was accordingly authorized to arrest George, as he did, unless the statute mandated the prior issuance of an arrest warrant in such a case, as the dissent contends. As we have indicated, we do not think that the statute has this effect. For us so to hold in the circumstances of this case would be, we think, to substitute doubtful form for real substance. We hold, on the contrary, that the district court's order of November 20, 1978, directing the arrest of violators of the terms of their conditional release was a sufficient authority for Dade's arrest of George on that account and adequately met the basic purpose of the statute, which is that such a violator should be arrested, if necessary, and brought before the court to be dealt with appropriately. In our view in the light of the November 20, 1978 order, a formal warrant for the arrest of George for this violation of the terms of his release would have served no useful purpose if it had been issued and lodged in the files. The administration of justice is necessarily and properly burdened with many requirements, some constitutional and some statutory, for the protection of the individual accused of crime. We do not think it is in the public interest and we cannot believe that it was the congressional purpose to add to this necessary burden the additional requirement of issuing a formal arrest warrant, which would have been of no practical benefit to George, but merely an addition to the files. As Justice Powell said in *Gerstein v. Pugh,* 420 U.S. 103 (1975) at p. 113, 95 S.Ct. 854 at 862, 43 L.Ed.2d 54:

"Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. . . ."

While George raises no question as to the absence of an arrest warrant, he does contend that the arrest was not lawful in that there was insufficient evidence as a matter of law that he was informed of the reason for his arrest as required under 5 V.I.C. § 3565(c). That section provides:

"The person making an arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it . . . . ."

As to this, Dade testified that he informed George that he was being arrested for "not coming in and signing our book". George does not contend that he was unaware of Dade's identity as a deputy United States marshal. As a condition of his release on bail, George had been directed to report weekly to the United States marshal's office and was subsequently, at the time of his arraignment, ordered to continue to report weekly to the marshal's office. There was no direct evidence that George had knowledge of the district court's order directing the arrest of persons violating the conditions of their release. However, it is clear that George knew he was required by the court to report to the marshal's office weekly and that he had not done so. Moreover, during his weekly appearance at the marshal's office, George was required to sign a book and the record shows that he did sign it for a number of weeks in 1978.

We are satisfied that the jury could find that Dade's statement about "not coming in and signing our book" adequately informed George of the reason for his arrest. It was not incumbent on the deputy United States marshal, under § 3565(c), to expound the law. It was merely necessary to give the defendant in layman's language sufficient information to enable him to understand why he was being taken into custody.

■ The contention is made that the evidence was insufficient to permit the jury to find that George had the necessary intent to commit the offense of escape.[1] This contention appears to be based on the trial judge's somewhat inaccurate summarization of Dade's testimony—made in connection with his consideration of the defendant's motion for acquittal after the government had presented its case-in-chief—with respect to where Dade finally confronted George after George left the deputy United States marshal's van. Irrespective of the trial judge's recollection of the precise extent of George's physical flight from the custody of Dade, we are satisfied, based on our independent review of the record, that there was sufficient evidence for the question of intent to go the jury and to sustain the jury's verdict.

The appellant contends that the trial judge improperly instructed the jury and erroneously refused to give a requested instruction in connection with the jury's consideration of the escape count.

■ To the extent that these contentions concern the requirements of 5 V.I.C. § 3565(c), we have already discussed their application to the circumstances of the arrest in this case and we are satisfied that the trial judge adequately instructed the jury in this regard. With respect to the trial judge's comment that an individual who questions the authority of an arresting officer does so at his peril, the remark merely states the applicable law. *See United States v. Cluck*, 542 F.2d 728, 732 (8th Cir.), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 597 (1976); *United States v. Allen*, 432 F.2d 939 (10th Cir. 1970); *United States v. Haley*, 417 F.2d 625 (4th Cir. 1969).

■ The trial judge's failure to use the precise charge requested by the defense which set forth the theory of the defense on the issue of intent to escape was not error. The requested instruction was somewhat misleading. Moreover, the charge given adequately instructed the jury on the point. *See United States v. Blair*, 456 F.2d 514 (3d Cir. 1972).

We conclude that George's conviction on the first count should be affirmed.

■ The second count charges George with endeavoring by threats to influence, intimidate and impede an officer of the District Court of the Virgin Islands in the discharge of his duties in violation of 18 U.S.C. § 1503. That statute makes it a crime by threats of force to endeavor to influence, intimidate or impede any officer of any court of the United States in the discharge of his duty. As we have seen, there was evidence from which the jury was justified in finding that George did endeavor to intimidate Deputy Marshal Dade in the discharge of his duty by threats that he would kill Dade and his family. The jury was also justified in finding that Dade was an officer of the District Court of the Virgin Islands. The statute, however, is directed to intimidating an officer of a "court of the United States". The question, accordingly, remains whether the District Court of the Virgin Islands is a "court of the United States" within the meaning of the statute under which George was convicted.

The District Court of the Virgin Islands was originally created to supersede the former Danish insular courts by identical ordi-

1. The district court charged the jury, on the element of intent, that it must find that George had a "specific intent to avoid the confinement that was in store for him if he violated the provisions of the release." We need not decide whether, in the light of *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), the district court required too high a standard of proof of intent to escape since we conclude that there was sufficient evidence to support a finding that even this heavy burden of proof was met.

nances adopted concurrently by the two colonial councils of St. Croix and of St. Thomas and St. John, respectively. The ordinances were approved by the Governor on August 15, 1921, in the case of the St. Croix ordinance, and on December 20, 1921, in the case of the St. Thomas and St. John ordinance. Each provided in section 1 that "The Judicial power of the Virgin Islands of the United States is hereby declared to be vested in a District Court, Police Courts and Juvenile Courts and a District Court Commissioner." Section 2 provided that "The District Court is a court of general and original jurisdiction in all civil, criminal, admiralty, equity, insolvency and probate matters and causes, unless jurisdiction is conferred on some other court, in which event the jurisdiction of the District Court is concurrent." Section 5 provided for the appointment by the governor of a judge for the district court who should hold office for two years and be eligible for reappointment. Chapter 87 of Title III of the substantially identical Codes of Laws of the Municipality of St. Croix and of the Municipality of St. Thomas and St. John, approved respectively July 12, 1920, and March 17, 1921, provided for appeals from the police courts to the district court in civil cases. Chapter 37 of Title V of the Codes provided for similar appellate jurisdiction in criminal cases. Thereafter, by section 25 of the Act of Congress of June 22, 1936, c. 699, 49 Stat. 1813, establishing a civil government for the Virgin Islands, the judicial power of the Virgin Islands was vested in a court designated "the District Court of the Virgin Islands" and in such courts of inferior jurisdiction as might be established by local law. Section 26 of the Act authorized the president, with the advice and consent of the Senate, to appoint a judge for the district court. Finally, by the Revised Organic Act of July 22, 1954, c. 558, 68 Stat. 506, which presently provides for the territorial government, the district court, as presently constituted, was established. Sections 21 and 22 of the Act of 1954 provide:

"§ 21. The judicial power of the Virgin Islands shall be vested in a court of record to be designated the 'District Court of the Virgin Islands', and in such court or courts of inferior jurisdiction as may have been or may hereafter be established by local law." 48 U.S.C.A. § 1611.

"§ 22. The District Court of the Virgin Islands shall have the jurisdiction of a district court of the United States in all causes arising under the Constitution, treaties and laws of the United States, regardless of the sum or value of the matter in controversy. It shall have general original jurisdiction in all other causes in the Virgin Islands, exclusive jurisdiction over which is not conferred by this Act upon the inferior courts of the Virgin Islands. When it is in the interest of justice to do so the district court may on motion of any party transfer to the district court any action or proceeding brought in an inferior court and the district court shall have jurisdiction to hear and determine such action or proceeding. The district court shall also have appellate jurisdiction to review the judgments and orders of the inferior courts of the Virgin Islands to the extent now or hereafter prescribed by local law." 48 U.S.C.A. § 1612.

Section 24, as subsequently amended, provides for the appointment by the president, with the advice and consent of the Senate, of two judges for the district court who hold office for terms of eight years.

It will thus be seen that the present District Court of the Virgin Islands is the direct successor to the district court which was created for the Virgin Islands by the municipal ordinances of 1921. It is, as the Revised Organic Act plainly indicates, the repository of the judicial power of the Virgin Islands with general original jurisdiction in all but certain minor causes. It is thus clear that it is a territorial court, indeed, the chief court of the territory. Indeed, the fact that Congress expressly named it the District Court of the Virgin Islands rather than a district court for the Virgin Islands serves to reinforce this view. It is, of course, a court created by act of Congress, under the power to make rules

and regulations respecting the territory belonging to the United States given by Article IV, section 3 of the Constitution, but it is not a court of the United States created under Article III, section 1. The fact that its judges do not hold office during good behavior and that the court is thus excluded from the definition of "court of the United States" which is contained in 28 U.S.C. § 451 is confirmatory of this. True, as we said in *United States v. Lewis*, 456 F.2d 404, 408 (3d Cir. 1972), the District Court of the Virgin Islands may be treated as a court of the United States for some purposes. There may be statutes in which Congress has used the phrase "court of the United States" in the sense of an American court as opposed to a foreign tribunal. But the fact that it is given by statute the jurisdiction of a district court of the United States in causes arising under the Constitution, treaties and laws of the United States, itself negates the idea that the court is itself a district court of the United States. For otherwise that provision would be wholly unnecessary and, indeed, tautological. In *Mookini v. United States*, 303 U.S. 201, 205, 58 S.Ct. 543, 545, 82 L.Ed. 748 (1938), the Supreme Court said that "vesting a territorial court with jurisdiction similar to that vested in the District Courts of the United States does not make it a 'District Court of the United States' ".

It remains then to decide whether the District Court of the Virgin Islands, although a territorial and not a federal court, may be regarded as a court of the United States for the purposes of 18 U.S.C. § 1503, the statute for the violation of which George has been convicted. We think that the answer must be in the negative. The reference in § 1503 is not to the jurisdiction or powers of the court but rather to its nature as an institution, the classification, federal, state or territorial, into which it falls. Here, as we have seen, the district

court falls into the territorial rather than the federal classification. We are fortified in our conclusion by a decision by the District Court of the Territory of Alaska, *United States v. Bell*, 108 F.Supp. 777 (D.C. Alaska 1952), to the same effect upon the precise question here at issue. Before statehood the District Court of the Territory of Alaska was the only court in the territory and it had jurisdiction in both local and federal causes just as has the District Court of the Virgin Islands. The question arose in a prosecution for a violation of 18 U.S.C. § 1503 whether the court was a "court of the United States" within the meaning of § 1503 and Judge Dimond of the district court held that it was not and dismissed the indictment. *And see Talbot v. McCarrey*, 218 F.2d 565 (9th Cir. 1955). We conclude that George's conviction on the second count for violation of 18 U.S.C. § 1503 must be reversed.

In so holding we do not leave the deputy marshals without protection. The Virgin Islands Code makes it a crime to willfully resist, delay or obstruct any public officer in the discharge or attempted discharge of any duty of his office. 14 V.I.C. § 1508.

The judgment of conviction on the first count will be affirmed and on the second count reversed.

ADAMS, Circuit Judge, concurring in the judgment in part and dissenting in part.

Inasmuch as I do not believe that the prosecution proved the existence of each element of 18 U.S.C. § 751(a) (Supp. II 1978), I respectfully dissent from the portion of the opinion of the Court affirming Etienne George's conviction.

Section 751(a) punishes one who escapes or attempts to escape from the lawful custody of various federal institutions or officials.[1] George was convicted of escaping

---

1. Section 751(a) provides in full:
   Whoever escapes or attempts to escape from custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any proc-

ess issued under the laws of the United States by any court, judge, or commissioner, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more

from the custody, obtained pursuant to an lawful arrest, of an officer of the United States. Thus, to establish a violation of § 751(a), the prosecution must prove that (1) the defendant was in custody; (2) custody was held by an officer of the United States; (3) custody was obtained pursuant to a lawful arrest; and (4) the defendant escaped. In my view, the prosecution has not proved the existence of the third element of § 751(a)—that custody was obtained pursuant to a lawful arrest.

At the time George committed the acts giving rise to the conviction at issue here, he was free on bail pending trial on felony charges brought by the Government of the Virgin Islands.[2] At the October 29, 1978 arraignment, George was instructed that, as a condition of his release, he must report each week to the United States Marshal.[3] On March 8, 1979, a deputy marshal approached George while he was walking down the street and arrested him for failing to report to the Marshal's Office for two consecutive weeks. The arrest was made without a warrant, and there is no contention that George was engaged in unlawful activity at the time of the arrest or was seeking to flee from the jurisdiction. Shortly after George was taken into custody, he temporarily escaped.

The release on bail of persons accused of noncapital crimes is governed by 18 U.S.C. § 3146 (1976).[4] Subsection (c) of that statute describes the information that must be brought to the attention of the accused at the time he is released. It provides:

A judicial officer authorizing the release of a person under this section shall issue an appropriate order containing a statement of the conditions imposed, if any, shall inform such person of the penalties applicable to violations of the conditions of his release and shall advise him that *a warrant for his arrest* will be issued immediately upon any such violation.

18 U.S.C. § 3146(c) (1976) (emphasis added). Although the Fourth Amendment itself may not require that, in the absence of exigent circumstances, arrests be made only pursuant to a warrant,[5] § 3146(c) mandates that the arrest of a person suspected of

---

than $5,000 or imprisoned not more than five years, or both; or if the custody of confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both.

2. Specifically, the information charged George with third degree burglary, grand larceny, and possession of stolen property in violation of V. I. Code Ann. tit. XIV, §§ 444(1), 1083(1) & 2101 (1964 & Supp.1978).

3. Authority for this requirement was provided by a general order by Chief Judge Christian of the District Court of the Virgin Islands, dated November 20, 1978, which provides in pertinent part: "[A]ll persons accused of criminal offenses in the District Court of the Virgin Islands shall report to the Office of the United States Marshal at 8:30 a. m. on Wednesday of each week, if any such defendant is not in custody . . . ."

4. In *Government of Virgin Islands v. Ortiz*, 427 F.2d 1043 (3d Cir. 1970), we determined that "the Bail Reform Act does not by its own terms apply to cases where the offense charged is a violation of the Virgin Islands Code." *Id.* at 1047. Under our supervisory powers, though, we held that the standards and procedures set forth in the Act will "be adopted and followed in the consideration and disposition of bail applications in the District Court of the Virgin Islands." *Id.* at 1048.

In Virgin Islands cases involving an alleged violation of the United States Code, however, the Bail Reform Act applies by its own force. The prosecution argued in *Ortiz* that, in reenacting 48 U.S.C. § 1571 in 1968, Pub.L. 89–548, § 1, 80 Stat. 371, Congress intended to repeal the applicability of the Bail Reform Act to cases in the District Court of the Virgin Islands. *See* 427 F.2d at 1045–47. We rejected this argument and held that § 1571 did not alter the preexisting applicability of the Bail Reform Act to cases tried in the courts of the Virgin Islands. *Id.* at 1046.

5. *See United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (upholding the statutory and regulatory authority of postal employees to "make arrests without warrant for felonies cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such a felony"); *cf: Payton v. New York*, —— U.S. ——, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (absent exigent circumstances, police may not constitutionally enter a private dwelling to make a warrantless arrest).

violating the conditions of his bail be made under the authority of a valid arrest warrant.

The majority dismisses this interpretation of § 3146(c) because, in its view, the statute makes only an "oblique reference to a warrant." In light of the clear statutory language requiring that a person released on bail be informed that "a warrant for his arrest will be issued immediately upon any such violation," 18 U.S.C. § 3146(c) (1976), I cannot agree that this is either an "oblique reference" or that "its thrust is [merely] to inform the person that violations of the conditions of his release will subject him to arrest." [6]

Nor can I agree with the majority's apparent suggestion that insistence on compliance with the statutory directive is a mere technicality. There are substantial practical reasons to support the conclusion that Congress intended that, absent exigent circumstances, the arrest of persons free on bail be made only pursuant to a warrant. The statutory requirement serves not only to inform the accused that he is suspected of violating a condition of his release, but also to prevent such confrontations from becoming socially disruptive. Thus, if the accused questions whether the alleged bail violation in fact had occurred, he might well choose to resist the officer's assertion of authority, and the attempt to arrest him could readily result in a public fracas. This would seem to be particularly true where, as here, the accused had been previously advised by the court that, if he should violate a condition of his bail, a warrant would issue for his arrest. An attempt to arrest the accused without a warrant might reasonably appear to him to be an unauthorized and an unlawful intrusion on his liberty which would justify resistance. The risk of disobedience is exacerbated further where, as in the present situation, the arresting officer is not in uniform and does not offer to show a badge or other identification before attempting to make the arrest. It does not comport with the concept of an orderly society for law enforcement officers, especially in plain clothes, to arrest citizens on the streets, at least in the absence of imminent or occurrent criminal activity or an attempt to flee.

There is no evidence that the Deputy United States Marshal who arrested George did so under the authority of a warrant. Nor does the prosecution claim that there were present at the time of the arrest exigent circumstances that would have prevented the Marshal from obtaining a warrant. There is no suggestion, for example, that George was in the process of committing a crime or was attempting to flee from the jurisdiction. Indeed, because George had failed twice in two weeks to report to the Marshal, it would appear that the Marshal had ample time in which to secure a warrant for his arrest. The prosecution offers no explanation or justification for the absence of an arrest warrant.[7] Under these circumstances, it seems clear that the arrest was not in conformity with the statute. And, because a lawful arrest is an element of § 751, I would reverse George's conviction for that offense.

---

6. The remainder of the majority's discussion of the arrest warrant issue appears not to challenge the interpretation I have given § 3146(c). Rather, the Court proceeds to establish that there is no constitutional requirement that arrests be made pursuant to a warrant—a proposition with which I do not disagree. *See* note 5 and accompanying text *supra*.

7. In fairness to the prosecution, the lack of an arrest warrant is not one of the grounds raised by George in support of his contention that his arrest was unlawful. Inasmuch as the lawfulness of the arrest is an element of § 751, however, we must consider the validity of the arrest even if it was not challenged at trial or raised on appeal. *Screws v. United States*, 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945) (plurality opinion); *United States v. Rodrigues*, 491 F.2d 663, 666–67 (3d Cir. 1974) (Adams, J., concurring).