In re JARITZ INDUSTRIES, LTD.
d/b/a Pennysaver Printing,
Debtor/Appellee.

VICKERS ASSOCIATES, LTD.,
Plaintiff/Appellant,

v.

Joel URICE, Defendant/Appellee.

Civ. Nos. 96–3, 96–28.
Adv. No. 395–0005.

District Court, Virgin Islands,
D. St. Thomas and St. John.

March 17, 1997.

A. Jeffrey Weiss, St. Thomas, V.I., for Appellant.

Carol Ann Rich, St. Thomas, V.I., for Appellee Jaritz.

David Bornn, St. Thomas, V.I., for Appellee Joel Urice.

## MEMORANDUM OPINION .

MOORE, Chief Judge.

Vickers Associates, Ltd. ["Vickers"] appealed several orders issued by Judge Joseph L. Cosetti, a senior judge of the United States Bankruptcy Court for the Western District of Pennsylvania, who was assigned to sit in the Virgin Islands pursuant to 28 U.S.C. § 155(a). Vickers was a secured creditor in the Chapter 11 bankruptcy proceeding of the debtor, Jaritz Industries, Ltd. d/b/a Pennysaver Printing ["Jaritz"]. The above-captioned appeals actually duplicate an earlier appeal which Vickers pursued in attempt to relieve itself of the bankruptcy judge's confirmation of the reorganization plan. Because Vickers filed duplicitous motions and grounds for relief in both the bankruptcy proceeding and the appeal, this Court remanded Vicker's first appeal on November 13, 1995, finding

> that the appeal was "wholly inappropriate" and counsel for Vickers was "warned that such duplicitous filings are disfavored, and could be considered unreasonable and vexatious multiplication of the proceedings in this case. In the future, the Court w[ould] not hesitate to require counsel, or a party,

'to satisfy personally [any] excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.' "

*In re Jaritz Industries, Ltd.,* Civ. Nos. 96-3 & 96-28, slip op. at 3 (D.V.I. June 26, 1996) (citations omitted).

Shortly thereafter, Vickers filed these two appeals, which contained the essence and purpose of the first appeal, along with several other challenges, including an appeal of the bankruptcy judge's sanctions order. Among the alleged errors, Vickers challenged the removal of the Territorial Court action, *Vickers Associates, Ltd. v. Joel Urice;* the confirmation order precluding Vickers from pursuing remand of the adversary proceeding; the imposition of sanctions against Vickers based on its unreasonable and vexatious multiplication of proceedings; and the award of fees and costs. This Court reviewed and rejected all of Vickers' substantive grounds for appeal on June 24, 1996. After independently assessing Victors' and its counsel's conduct, this Court determined that Victors "ha[d] made the resolution of this appeal very difficult and unnecessarily time consuming. Having examined the record and in light of th[e] Court's warning of November 13, 1995," the Court ordered Victors and its counsel to "show cause why sanctions should not be imposed separately against Vickers and against its counsel in his personal capacity."

In the course of determining the remaining issue of sanctions raised in this matter, the very significant question of this Court's jurisdiction to hear appeals from orders entered by a bankruptcy judge has surfaced. Ever vigilant to the requirement that this Court must dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter," [1] we gave the parties and other interested persons and entities an opportunity to brief the issue. The parties have submitted briefs, and the United States has intervened and filed an *amicus curie* brief. Jaritz and the United States assert that there is jurisdiction while Vickers con-

---

1. FED. R. CIV. P. 12(h)(3); *see, e.g., Moravian School Advisory Board of St. Thomas, V.I. v.*

*Rawlins,* 70 F.3d 270, 276 (3d Cir.1995)

tends that the Court does not have jurisdiction over this appeal. Underlying the issue is the fundamental structure of governance the Congress has established for the Territory under The Revised Organic Act of the Virgin Islands ["Revised Organic Act"].[2] The particular question arises from the restriction in the United States Code that only 'district courts of the United States' have jurisdiction to hear appeals from decisions of bankruptcy judges and the peculiar source of this Court's judicial power as it relates to the statutory scheme for the temporary assignment of a bankruptcy judge to another "judicial district".

The jurisdictional issues which the Court is required to address in this bankruptcy appeal stem from the fact that Congress has yet to apply Article III of the Constitution to the Territory of the Virgin Islands. Thus, a resident of the Virgin Islands does not have the right to have a federal question or constitutional issue determined in a United States district court constituted under Article III. A citizen of the United States who sues in the District Court of the Virgin Islands, whether or not she resides in the Virgin Islands, loses the right to have her case decided by federal judges whose independence is guaranteed by life-time appointments and protections against reduction in salary.

After more particularly defining the problem presented by this case, this opinion explains how the problem came to exist. This history evidences a schizophrenia in the Supreme Court's dealing with the courts created by Congress in the territories and in the treatment of the District Court of the Virgin Islands by the United States Court of Appeals for the Third Circuit. The problem is then analyzed in light of these precedents. The decision rendered in the instant case reflects this historical inconsistency.

This Court is compelled to conclude from recently reaffirmed rulings by the United States Court of Appeals for the Third Circuit that the District Court of the Virgin Islands is a 'territorial' court and not a federal court. There is no statutory authority to assign a United States bankruptcy judge to be a judicial officer of such a 'territorial' court. Succinctly stated, there is no 'judicial district' of the United States in the Virgin Islands containing a district court of the United States to which a bankruptcy judge appointed in a judicial district in the United States can be assigned. This Court accordingly rules that the bankruptcy judge had no authority or jurisdiction to enter the order being appealed in this case. The order from which this appeal has been taken is therefore a nullity. Although the Court finds that it has jurisdiction to review the order of a bankruptcy judge who would be properly authorized by statute to act as a judicial officer of the District Court of the Virgin Islands, there simply is no such valid order to review in this case.

## I. THE PROBLEM DEFINED

Appellate jurisdiction over orders of a bankruptcy judge is set forth in the United States Code: "[D]istrict courts of the United States shall have jurisdiction to hear appeals ... from [decisions of bankruptcy judges].... An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." 28 U.S.C. § 158(a) (1995). As used in this section of Title 28 of the United States Code, "the terms 'district court' and 'district court of the United States' includes ... district courts constituted by chapter 5 of [Title 28] ... The terms 'district' and 'judicial district' mean the districts enumerated in Chapter 5 of [Title 28]." 28 U.S.C. § 451. These 'district courts of the United States' are constituted by Congress under Article III of the United States Constitution through 28 U.S.C. § 132 in each of the 'judicial districts' Congress has listed in 28 U.S.C. §§ 81–131. The Virgin Islands has not been established as such a judicial dis-

2. Congress first 'organized' the Virgin Islands with the enactment of the Organic Act of 1936 (codified at 48 U.S.C. §§ 1391–1409 (1952), reprinted in 1 V.I. Code Ann., Historical Documents, 1–83 preceding Title 1 (1967)), which functioned as the 'constitution' of the Virgin Islands until it was replaced by the Revised Organic Act of the Virgin Islands (codified at 48 U.S.C. 1541–1645 (1995), reprinted in 1 V.I. Code Ann., Historical Documents, 73–177 preceding Title 1 (1995) (as amended)) ["Revised Organic Act"].

454

trict and the District Court of the Virgin Islands is not a district court of the United States. There is thus no such court as the 'United States District Court for the District of the Virgin Islands.'

The provision governing the appointment of bankruptcy judges in States of the Union differs from the provision for such appointment in Territories of the United States. Section 152(a)(1) of Title 28 authorizes the United States court of appeals for a circuit to appoint bankruptcy judges for the judicial districts in States within its circuit, who "shall serve as judicial officers of the United States district court established under Article III of the Constitution." Those judicial districts are listed in section 152(a)(2). Section 152(a)(4) recognizes that the Virgin Islands is not one of these judicial districts and therefore provides separate authority for the Third Circuit to "appoint bankruptcy judges under this chapter for such district if authorized to do so by the Congress of the United States under this section."

No bankruptcy judge has been appointed to serve as a judicial officer of this Court under section 152(a)(4), simply because none has ever been authorized by Congress. Thus, the bankruptcy judge whose order is the subject of this appeal is not serving as a judicial officer of the District Court of the Virgin Islands by appointment under section 152(a)(4). Rather, the order which is the subject of this appeal was entered by a bankruptcy judge temporarily designated to serve this Court pursuant to 28 U.S.C. § 155(a). Section 155(a) provides that, for judicial districts of the United States listed in section 152(a)(2), a "bankruptcy judge may be transferred to serve temporarily as a bankruptcy judge in any judicial district other than the judicial district [of the United States] for which such bankruptcy judge was appointed ...." Again, the Virgin Islands is not listed in section 152(a)(2) as a judicial district of the United States to which a bankruptcy judge may be transferred to serve temporarily.

By the express terms of the applicable statutory provisions, then, the District Court of the Virgin Islands is not included as a tribunal which has jurisdiction to hear appeals from decisions of bankruptcy judges—

it is not defined as a district court of the United States. Moreover, the statutory authorization for temporary transfer of bankruptcy judges does not expressly extend to the Virgin Islands—the Virgin Islands is not defined as a judicial district of the United States. Our probe, then, breaks down into two specific areas of inquiry. The first question is whether this Court's jurisdiction as a United States district court under the Revised Organic Act suffices to give it appellate jurisdiction over appeals from decisions of a bankruptcy judge. *See* Revised Organic Act § 22, 48 U.S.C. § 1612. (The Revised Organic Act of 1954 is codified at 48 U.S.C. §§ 1541–1645 (1995), *reprinted in* V.I. CODE ANN., Historical Documents, 73–177, preceding tit. 1 (1995) (as amended) ["Revised Organic Act"] ). Assuming that the answer to the first question is yes, the question remains whether the District Court of the Virgin Islands can be treated as if it were a district court in a judicial district of the United States to which a bankruptcy judge appointed in a judicial district of the United States may be transferred temporarily.

The Court answers the first question affirmatively, that is, this Court does have the jurisdiction to review an appeal from a bankruptcy judge, assuming the judge has authority to act in the Virgin Islands. Based upon the current nature of the District Court of the Virgin Islands as a territorial institution, its "territorial rather than ... federal classification," as defined currently by the United States Court of Appeals, the District Court of the Virgin Islands cannot be treated as a district court in a judicial district of the United States to which a bankruptcy judge can be assigned. *See United States v. George*, 625 F.2d 1081, 1089 (3d Cir.1980). The Court thus very reluctantly must answer the second query in the negative. There is no legal basis under which a United States bankruptcy judge may temporarily be assigned to the Virgin Islands under 28 U.S.C. § 155(a).

## II. THE PROBLEM CREATED—HISTORICAL BACKGROUND

One uninitiated in the byzantine twists and turns of federal jurisdiction should not be

faulted for jumping to the logical conclusion that the District Court of the Virgin Islands is a court of the United States that should be accorded the same treatment as district courts established in the States. After all, the Congress of the United States established the District Court of the Virgin Islands under Article IV, Section 3, Clause 2, of the Constitution, just as it established the United States district courts in the States of the Union under Article III of the Constitution. A relatively brief and far from exhaustive review of the history of how Congress has set up and the courts have interpreted the governance of the territories, including their court systems, will demonstrate that the determination of this Court's jurisdiction to review the order of a bankruptcy judge is anything but a simple task.

## A. Establishment of Territorial Courts as Separate from Article III Courts

With the Northwest Territories, which actually predated the Constitution, Congress set up for the territories a tripartite structure of governance patterned on the Constitution,[3] which pattern was incorporated in the government established more than 150 years later for the Virgin Islands with the Organic Act of 1936.[4] We begin with the dicta in the opinion of Chief Justice John Marshall in 1828 which started all the confusion, namely, that the 'judicial Power of the United States' under Article III of the Constitution did not apply to the courts established by Congress in the Florida Territory whose judges were not appointed for life. *American Insurance Co. v. 356 Bales of Cotton (Canter)*, 26 U.S. (1 Pet.) 511, 7 L.Ed. 242 (1828). The confusion has been sorted out more recently in a Supreme Court decision confirming that the Court of Claims and Court of Customs and Patent Appeals are Article III courts. *The Glidden Company v. Zdanok*, 370 U.S. 530, 545, 82 S.Ct. 1459, 1470, 8 L.Ed.2d 671 (1962).

Mr. Justice Marshall's construction of the organic act for the Florida Territory, although not necessary to the decision in the case and therefore *obiter dicta*, has been quoted over and over as the basis for refusing to treat the congressionally created courts of the territories as real courts of the United States:

> The Judges of the Superior Courts of Florida[5] hold their offices for four years. These Courts, then, are not constitutional

---

3. *See* U.S.C.A. Organic Laws of the United States of America, Northwest Ordinance, preceding Article 1 of Constitution, (1987) ["Northwest Ordinance"]. The confederate congress passed the ordinance on July 13, 1787. Section 3 provided for the appointment of a governor. Section 4 provided for the appointment of a court of three judges with "a common-law jurisdiction" whose "commissions shall continue in force during good behavior." Section 9 set forth the manner in which the general assembly would be established and its members elected. Section 12 even provided for the election of "a delegate to Congress, who shall have a seat in Congress with a right of debating, but not of voting, during this temporary government."

4. Organic Act of 1936, *supra* note 2.

5. The insurance companies had challenged the validity of the judicial sale of 356 bales of salvaged cotton to David Canter by the Key West salvage court, a tribunal created by the legislature of the Territory of Florida. *American Insurance Co. v. 356 Bales of Cotton (Canter)*, 26 U.S. (1 Pet.) 511, 541, 7 L.Ed. 242 (1828). The question was whether investing the Key West salvage court with admiralty jurisdiction was inconsis-

tent with the Constitution and laws of the United States, including the jurisdiction granted the Superior Courts by Congress. *Id.* 26 U.S. at 543. Such admiralty jurisdiction in the Key West salvage court would only be inconsistent if the Superior Courts exclusively had jurisdiction over admiralty cases. *Id.* at 545–46. Once Justice Marshall ruled that Congress had given the Superior Courts only the jurisdiction over 'cases arising under the laws and Constitution of the United States' and not over cases in admiralty, it was only necessary to find this allocation of jurisdiction to be within Congress' Article IV powers over the territories. The constitutionality of the Superior Courts established by Congress under Florida's Organic Act was not at issue. Thus, all that was *necessary for the decision* presented by the facts of this case is the holding that "[a]lthough admiralty jurisdiction can be exercised in the states in those Courts, only, which are established in pursuance of the Id article of the Constitution; the same limitation does not extend to the territories. In legislating for them, Congress exercises the combined powers of the general, and of a state government." Hence, my opinion that the rest of the quote in the text above is pure obiter dicta. *See* Gary Lawson, *Territorial Governments And The Limits of Formalism*, 78 CAL. L.REV. 853, 887–92 (1990)

Courts, in which the judicial power conferred by the Constitution on the general government, can be deposited. They are capable of receiving it. They are legislative Courts, created in virtue of the general right of sovereignty which exists in the government, or in virtue of that clause which enables Congress to make all needful rules and regulations, respecting the territory belonging to the United States. The jurisdiction with which they are invested, is not a part of that judicial power which is defined in the 3d article of the Constitution, but is conferred by Congress, in the execution of those general powers which that body possesses over the territories of the United States. Although admiralty jurisdiction can be exercised in the states in those Courts, only, which are established in pursuance of the 3d article of the Constitution; the same limitation does not extend to the territories. In legislating for them, Congress exercises the combined powers of the general, and of a state government.

26 U.S. (1 Pet.) at 546.[6]

By the late 1800's, Justice Marshall's *356 Sales (Canter)* came to be interpreted to mean that Congress can exercise its Article IV authority to invest the courts of a territory with the identical judicial power that is enumerated in Article III. *See, e.g., The City of Panama,* 101 U.S. 453, 460, 25 L.Ed. 1061 (1879) (jurisdiction equivalent to that defined by Article III may be conferred on a district court of a territory by Congress in the execution of the general power to make all needful

rules and regulations respecting the territories).

The modern interpretation of the meaning of Justice Marshall's dicta can be found in *Glidden.* In confirming the declaration of Congress that the Court of Claims and the Court of Customs and Patent Appeals are Article III courts, the Court thereby also provides authority for the proposition that Congress can establish the United States District Court for the District of the Virgin Islands under Article III of the Constitution. Mr. Justice Harlan, writing the plurality opinion, explained the current view of what John Marshall meant in 1828.

> All the Chief Justice meant, and what the case has ever after been taken to establish, is that in the territories cases and controversies falling within the enumeration of Article III may be heard and decided in courts constituted without regard to the limitations of that article; courts, that is, having judges of limited tenure and entertaining business beyond the range of conventional cases and controversies.

*Glidden,* 370 U.S. at 544–45, 82 S.Ct. at 1470. The plurality further acknowledged the obvious, that "[f]ar from being 'incapable of receiving' federal-question jurisdiction, the territorial courts have long exercised a jurisdiction commensurate in this regard with that of the regular federal courts and have been subjected to the appellate jurisdiction of this Court precisely because they do so." *Id.,* n. 13 (citing, *inter alia, International Longshoremen's Union v. Juneau Spruce Corp.,* 342 U.S. 237, 240–41, 72 S.Ct. 235, 237–38, 96 L.Ed. 275 (1952)).

---

6. What helps perpetuate the confusion was Justice Marshall's use of 'legislative' to describe the courts of the territories. This label of 'legislative court' never accurately described the territorial courts. Courts in the territories have always exercised the judicial and not the legislative function; they have always had the jurisdiction of United States District Courts. Since its creation in 1936, the District Court of the Virgin Islands has been empowered to exercise only the judicial function of deciding cases and controversies presented to it. If the adjectives 'legislative' and 'constitutional' are intended to signify the source of authority by which a court was created, they are meaningless and very confusing because both district courts were created by Congress under the Constitution—the District Court of the Virgin islands under Article I, and a United States district court under Article III. A more precise use of terms would facilitate clear thinking in this historically murky area. A district court created for a territory, without more, is an 'Article IV court'; a district court established in a State is an 'Article III court'. Thus, the District Court of the Virgin Islands is an Article TV court until Congress exercises its authority to declare it an Article III court and imbue its judges with tenure of office during good behavior and irreducible compensation. See, *e.g., The Glidden Company v. Zdanok,* 370 U.S. 530, 545, 82 S.Ct. 1459, 1464–65, 8 L.Ed.2d 671 (1962), discussed *infra* in text.

The *Glidden* plurality opinion continues, "Article III has been viewed as inapplicable to courts created in unincorporated territories outside the mainland" upon practical considerations which dictated that Congress needed more flexibility in dealing with the governance of the territories. 370 U.S. at 547, 82 S.Ct. at 1471. The realities of isolation of the territorial governments from Washington were also seen as reducing the urgency for territorial judges to enjoy Article III independence from Congress. *Id.* at 546, 82 S.Ct. at 1470–71.

The touchstone of decision in all these cases has been the need to exercise the jurisdiction then and there and for a transitory period. Whether constitutional limitations on the exercise of judicial power have been held inapplicable has depended on the particular local setting, the practical necessities, and the possible alternatives. When the peculiar reasons justifying investiture of judges with limited tenure have not been present, the *Canter [356 Bales of Cotton]* holding has not been deemed controlling.

Since the conditions obtaining in one territory have been assumed to exist in each, this Court has in the past entertained a presumption that even those territorial judges who have been extended statutory assurances of life tenure and undiminished compensation have been so favored as a matter of legislative grace and not of constitutional compulsion.[7] By a parity of reasoning, however, the presumption should be reversed when Congress creates courts the continuing exercise of whose jurisdiction is unembarrassed by such practical difficulties.

*Id.* at 547–48, 82 S.Ct. at 1471–72 (citations and footnotes omitted). The Supreme Court hinted that "whether the same conditions still obtain in each of the present-day territories or whether, **even if they do,** Congress might ... choose to establish an Article III court in one or more of them." *Id.* at 548 n. 19, 82 S.Ct. at 1472 n. 19 (emphasis added).

All five Justices making up the dissent and the plurality, were in full agreement that Congress could invest some nonjudicial functions in Article III courts within geographic areas over which it exercises plenary authority, which would include, not only the District of Columbia, but also the territories. The *Glidden* plurality noted that because "the restraints of federalism" were not present with respect to the District of Columbia, courts could "perform any of the local functions elsewhere performed by state courts [such as, probate and divorce, and appointing members of the Board of Education and of the Commission on Mental Health]" without impacting upon their Article III status. *Id.* at 581, 82 S.Ct. at 1489 (citations omitted). The *Glidden* dissent observed that the District Court of the District of Columbia was an Article Ill court "even though it possesses powers that Article III courts could not exercise." [8]

The United States Court of Appeals for the Third Circuit has agreed that the "Congressional sovereign power under Art. IV, § 3, cl. 2 is at least as broad" as the authority of Congress over the District of Columbia under Art. I, § 8. *United States v. Canel,* 708 F.2d 894, 897 (3d Cir.1983) ("Congress obviously could, as it has in the District of Columbia and Puerto Rico, provide for life-tenured judges [in the Virgin Islands] for federal as distinct from local matters.").

7. *Citing McAllister v. United States,* 141 U.S. 174, 186, 11 S.Ct. 949, 953, 35 L.Ed. 693 (1891) (the early acts passed by first several congresses right at and after adoption of Constitution provided for territorial courts with judges whose terms of office were during 'good behavior').

8. The Supreme Court and the Court of Appeals of the District of Columbia, predecessors of the present United States district court and United States Court of Appeals for the District of Columbia, were held to be Article III courts in *O'Donoghue v. United States,* 289 U.S. 516, 551, 53 S.Ct. 740, 750–51, 77 L.Ed. 1356 (1933). The Su-

preme Court was not yet prepared to recognize that Article III can apply to the unincorporated territories, although it acknowledged that Congress' Article IV powers over the territories were co-extensive with its Article I powers over the District of Columbia. *Id.* at 535–36, 53 S.Ct. at 744–45. In *dicta,* the Court distinguished territorial courts from those of the District of Columbia due in part to the "transitory character," the " 'presumably ephemeral nature of a territorial government' ". *Id.* at 536–37, 53 S.Ct. at 745. The grounds for this distinction were effectively eliminated by the Supreme Court in *Glidden.*

The above discussion makes clear that there is no constitutional impediment for Congress to deem the District Court of the Virgin Islands an Article III court and include it within the definition of District Courts of the United States contained in chapter five of Title 28. Indeed, except, of course, for the unequivocal expression of congressional intent that this Court should be an Article III court, it already possesses all of the necessary attributes of an Article III court the Supreme Court outlined in *Glidden*—

(1) its business is the business of the United States specified in Article III,

(2) it has jurisdiction over justiciable matters,

(3) it issues final judgments,

(4) its judges are appointed by the President with consent of the Senate,

(5) it has the power to take cognizance of any cause upon the existence of a suit instituted according to the regular course of judicial procedure,

(6) it has the power to pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision,

(7) its decisions are subject to no revisory or appellate power in any other branch of Government.

*Glidden,* 370 U.S. at 552, 586–87, 601 n. 6, 82 S.Ct. at 1474, 1491–92, 1499 n. 6. There would thus be some basis for considering the District Court of the Virgin Islands to be a de facto United States district court.

### B. When Territorial Courts are treated as United States District Courts

While Congress has not yet seen fit to confer Article III status on all territorial district courts, such courts have historically exercised the same jurisdiction as United States district courts. This has led to territorial district courts being inconsistently treated as courts of the United States for some purposes and not courts of the United States for others. The often cited rubric is that

[c]ourts of the Territories are ... not District Courts of the United States. We have often held that vesting a territorial court with jurisdiction similar to that vested in the District Courts of the United States does not make it a 'District Court of the United States.'

*Mookini v. United States,* 303 U.S. 201, 205, 58 S.Ct. 543, 545, 82 L.Ed. 748 (1938) (citations omitted) (district courts of the territories which would include the Virgin Islands, are not district courts of the United States under Criminal Appeals Rules).

While recognizing the distinction made in *Mookini,* the Supreme Court some twelve years later treated a territorial court as a United States district court in *Juneau Spruce,* 342 U.S. 237, 242, 72 S.Ct. 235, 238–39, 96 L.Ed. 275 (1952).[9] The Court there held the territorial district court of Alaska to be a district court of the United States within the meaning of the Labor Management Relations Act, because the jurisdictional requirements for suits in the district courts are "as applicable to the [territorial court] as to any court which in the technical sense is a district court of the United States." Although the District Court for Alaska had "the jurisdiction of district courts of the United States by the law which created it," namely the Alaska Organic Act,[10] the factor which allowed the Court to disregard the distinction between an Article IV territorial court and a United States district court was the broad national geographic coverage of the legislation intended by Congress. The Court construed the

---

**9.** Even before *Glidden,* and after *The City of Panama,* 101 U.S. 453, 460, 25 L.Ed. 1061 (1879), the Supreme Court has had occasion to find such congressionally created territorial courts—Article IV courts—to be the equivalents of United States district courts. *See Ex Parte Cooper,* 143 U.S. 472, 494, 12 S.Ct. 453, 457, 36 L.Ed. 232 (1892) ("where the district court of Alaska was acting as a district court of the United States ... proceeding in admiralty," it was a district court of the United States for purposes of

the Supreme Court's power to issue writs of prohibition to the district courts)

**10.** The jurisdiction of the district court for the Territory of Alaska in effect in 1952 was set forth as follows: "There is hereby established a district court for the District of Alaska, with the jurisdiction of district courts of the United States and with general jurisdiction in civil, criminal, equity and admiralty causes...." 48 U.S.C. § 101 (1948) (as amended)

words 'district court of the United States' to include the District Court for the Territory of Alaska.

> [W]e think that in the context of this legislation [the words 'district court of the United States'] are used to describe courts which exercise the jurisdiction of district courts.. .... The Act extends in its full sweep to Alaska as well as to the states and the other territories.... [S]ince Congress lifted the restrictive requirements which might preclude suit in courts having the district courts' jurisdiction, we think it is more consonant with the uniform, national policy of the Act to hold that those restrictions were lifted as respects all courts upon which the jurisdiction of a district court has been conferred. That reading of the Act does not, to be sure, take the words 'district court of the United States' in their historic, technical sense. But literalness is no sure touchstone of legislative purpose. The purpose here is more closely approximated, we believe, by giving the historic phrase a looser, more liberal meaning in the special context of this legislation.

*Id.* at 241–43, 72 S.Ct. at 238–39 (citations omitted). The District Court of the Virgin Islands is thus also a United States district court for purposes of this act, inasmuch as at the time of the decision, neither Alaska nor the Virgin islands had been included as judicial districts in the 1948 revisions to the Judicial Code. 28 U.S.C. §§ 81–131 (1954); *Juneau Spruce,* 342 U.S. at 241 n. 4, 72 S.Ct. at 239 n. 4.

Just as the Supreme Court has treated territorial district courts inconsistently, the United States Court of Appeals for the Third Circuit has also given conflicting interpretations of the jurisdiction and nature of the District Court of the Virgin Islands. The Court of Appeals has treated this Court as a 'court of the United States' for purposes of exercising its supervisory powers over the federal courts in the Circuit. The Court has held that "a rule adopted by the Supreme Court under its supervisory power over the courts of the United States [is] applicable to the courts of the United States and, thus, applicable to the courts of the Third Federal Judicial Circuit, of which the District Court of the Virgin Islands is one." *Government of the Virgin Islands v. Romain,* 600 F.2d 435, 437 (3d Cir.1979).[11] However, the court has also held that the District Court of the Virgin islands is not a court of the United States but rather a territorial court. *George,* 625 F.2d 1081. In *George,* the court held that a deputy United States Marshal serving the District Court of the Virgin Islands was not an officer of a 'court of the United States' under 18 U.S.C. § 1503.[12]

With all this as background, we now proceed to a more detailed look at the problem posed by the provisions in Title 28 regarding appellate review and the appointment and assignment of bankruptcy judges.

## III. THE PROBLEM ANALYZED

As may be clear from the complexity and length of this Opinion, a great deal of time, energy and effort is spent in determining this Court's jurisdiction, even before the merits of

**11.** *See also Government of the Virgin Islands v. Lovell,* 378 F.2d 799, 805–06 (3d Cir.1967) (supervisory power imposed Jencks Act on prosecution of territorial offenses instituted by the Government of the Virgin Islands though Act limited to prosecutions brought by United States); *Government of the Virgin Islands v. Ortiz,* 427 F.2d 1043, 1047–48 (3d Cir.1970) (although definition of 'offense' under Bail Reform Act of 1966 did not include territorial crimes, supervisory power held appropriate to apply Act in all cases tried in the District Court even while acknowledging that the "local laws enacted under the legislative power granted by Congress are territorial laws, not laws of the United States," citing *Harris v. Boreham,* 233 F.2d 110, 113 (3d Cir.1956); *Government of the Virgin Islands v. Bryan,* 818 F.2d 1069, 1071–75 (3d Cir.1987)) (applying the feder-

al Speedy Trial Act to Virgin Islands Code offenses tried in the District Court even though it applies only to a "Federal criminal offense which is in violation of any Act of Congress").

**12.** *Accord, e.g., Dr. Bernard Heller Foundation v. Lee,* 847 F.2d 83, 87 (3d Cir.1988) (District Court of the Virgin Islands not a United States district court for taxing costs under 28 U.S.C. § 1920); *United States v. Canel,* 708 F.2d 894, 896 (3d Cir.1983) (District Court of the Virgin Islands not a United States district court under Article III whose judges are entitled to life tenure); *Ali v. Gibson,* 572 F.2d 971, 974 (3d Cir.1978) (District Court of the Virgin Islands not a United States district court for federal habeas corpus under 28 U.S.C. § 2241(a)).

the case can be addressed, the issues can be decided, and the parties can receive relief. These exercises have become the routine and not the exception since the Virgin Islands Government passed laws divesting this Court of its original jurisdiction over local matters. The true nature of the District Court of the Virgin Islands created by the Revised Organic Act and its subsequent amendments has been uncovered once its jurisdiction as a local, territorial trial court was stripped away.

After examining recent decisions of the United States Court of Appeals for the Third Circuit, this Court concludes in the next section (A) that it has the jurisdiction to review a properly entered order of a bankruptcy judge. Unfortunately, in the following section (B) the Court finds that the current law in this Circuit compels the conclusion that the bankruptcy judge who entered the order in this case can not be authorized by statute to act as a judicial officer of the District Court of the Virgin Islands.

### A. Jurisdiction as a District Court of the United States

As noted, 28 U.S.C. § 158(a) grants jurisdiction only to 'district courts of the United States' to hear appeals from decisions of bankruptcy judges. Further, although Congress amended the Revised Organic Act in 1978 to vest this Court with the jurisdiction of 'a bankruptcy court of the United States,' there is no provision parallel to 28 U.S.C. § 158(a) directly and expressly granting this Court jurisdiction over **an appeal** from a bankruptcy judge. *See* REV. ORG. ACT 22(a), 48 U.S.C. § 1612(a). The fact that neither section 158(a) of Title 28 nor any provision of the Revised Organic Act directly confers jurisdiction on this Court to hear appeals from decisions of a bankruptcy judge does not end the inquiry, however, for Congress has vested the District Court of the Virgin Islands with the jurisdiction of a United States district court in section 22(a) of the Revised Organic Act. And it now appears that judicial interpretation of this Court's jurisdiction as a United States district court under section 22(a) has evolved to include the authority to

hear appeals from decisions of bankruptcy judges under 28 U.S.C. § 158(a).

While it is nowhere defined in the United States Code, the word 'jurisdiction' is a

term of large and comprehensive import embracing every kind of judicial action. It is the power of the court to decide a matter in controversy and presupposes the existence of a duly constituted court with control over the subject matter and the parties. Jurisdiction defines the powers of courts to inquire into facts, apply the law, make decisions, and declare judgment. The legal right by which judges exercise their authority. It exists when court has cognizance of class of cases involved, proper parties are present, and point to be decided is within the powers of the court. Power and authority of a court to hear and determine a judicial proceeding; and power to render particular judgment in question. The right and power of a court to adjudicate concerning the subject matter in a given case.

BLACK'S LAW DICTIONARY 853 (6th ed.1990) (citations omitted).

Section 23 of the Revised Organic Act as originally enacted in 1954 granted the Virgin Islands Legislature the authority to vest in the Territorial Court concurrent jurisdiction over all local civil causes of action and all local criminal offenses. 48 U.S.C. § 1613. Until the District Court was actually divested of Its original jurisdiction over all territorial civil and criminal matters as of January 1, 1994, the congressional intent to establish dual and independent judicial systems for territorial and federal matters remained somewhat obscure. This may help explain why it was not until the last few years that the United States Court of Appeals for the Third Circuit has acknowledged that the District Court of the Virgin Islands does indeed exercise the same judicial authority of a United States district court.

The process of transferring concurrent jurisdiction over local matters from the District Court under the Revised Organic Act began with the establishment of the Territorial Court of the Virgin Islands in 1976. 4 V.I.C. §§ 2, 71 (Supp.1996). Then, Congress in 1984 enacted amendments to the Revised

Organic Act ["1984 Amendments"] which enabled the local legislature to completely divest this Court of its general original and concurrent jurisdiction over all territorial causes of action. REV. ORG. ACT § 22, 48 U.S.C. § 1612. This effectively converted the District Court of the Virgin Islands to a court with the limited jurisdiction of a United States district court. The process was completed for all local civil actions effective October 1, 1991, and for all local criminal prosecutions as of January 1, 1994. 4 V.I.C. § 76 (Supp.1996).[13]

The United States Court of Appeals for the Third Circuit in the last few years has acknowledged the resulting transmutation of the District Court of the Virgin Islands. The court ruled that the "District Court of the Virgin Islands has exclusive jurisdiction equivalent to United States District Courts over such fields as admiralty, bankruptcy, patent, copyright and trademark, and other matters not relevant here." *Virgin Islands Housing Authority v. Coastal General Construction Services Corporation*, 27 F.3d 911, 914 (3d Cir.1994); *see also Brow v. Farrelly*, 994 F.2d 1027, 1034 (3d Cir.1993) (construing § 22(a), 48 U.S.C. § 1612 to find that District Court of Virgin Islands has exclusive federal jurisdiction).

Section 23 as amended by the 1984 amendments also provides support for treating the District Court of the Virgin Islands as a United States district court. Section 23 now provides that

> [t]he relations between the courts established by the Constitution or laws of the United States and the courts established by local law with respect to appeals, certiorari, removal of causes, the issuance of writs of habeas corpus, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings.

48 U.S.C. § 1613.

This provision has been recognized by the United States Court of Appeals for the Third Circuit as, on the one hand, furthering the autonomy of the local territorial courts, and, on the other hand, solidifying this Court's status as a federal court with the equal, and equally limited, jurisdiction of other federal courts. *In the Matter of Alison*, 837 F.2d 619 (3d Cir.1988); *Moravian School Advisory Board of St. Thomas, V.I. v. Rawlins*, 70 F.3d 270 (3d Cir.1995). Citing to section 23, the court in *Alison* wrote that the "overall congressional intention discernible in [the 1984 Amendments] is encouragement of the development of a local Virgin Islands appellate structure with greater autonomy with respect to issues of Virgin Islands law than heretofore." *Id.* at 622.

In holding that this Court could no longer rely on a local statute allowing this Court to transfer cases to the territorial court, the *Moravian* court noted that, as amended, section 23 of the Revised Organic Act "now provides for the relations between the District Court of the Virgin Islands and the territorial court to parallel the relations between the federal courts and the state courts." 70 F.3d at 274. The court interpreted the 1984 Amendment as eliminating any concurrent jurisdiction in this Court as soon as the Virgin Islands Legislature vested all original jurisdiction over purely local matters in the Territorial Court of the Virgin Islands. The net result is that the Court of Appeals ruled that the District Court of the Virgin Islands exercises the judicial authority of a federal court. *See also Brown v. Francis*, 75 F.3d ˈ860, 864 (3d Cir.1996) (holding that the removal statute, 28 U.S.C. § 1441, which by its terms is strictly limited to district courts of the United States, applies to the District Court of the Virgin Islands under section 23 of the Revised Organic Act).

■ Based on these recent interpretations of the Revised Organic Act as amended by the 1984 Amendments, this Court concludes that there is no functional difference between the judicial authority by which the District Court of the Virgin Islands and its judicial

---

**13.** *See Estate of Thomas Mall, Inc. v. Territorial Ct. of V.I.*, 923 F.2d 258, 262 n. 4 (3d Cir.), *cert. denied*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991) (Virgin Islands legislature has authority to divest District Court of jurisdiction over all local actions).

officers take cognizance of and decide cases and the authority by which United States district courts and their judicial officers adjudicate matters.[14] The only meaningful difference is that this Court's judges do not share the protection of appointment under Article III of the Constitution. Accordingly, the provision that grants "district Courts of the United States" jurisdiction to hear appeals from decisions of bankruptcy judges, 28 U.S.C. § 158(a), applies equally to the District Court of the Virgin Islands. In other words, for purposes of 28 U.S.C. § 158(a), the use of the term "district Courts of the United States" includes the District Court of the Virgin Islands, because this Court is jurisdictionally equivalent to a district court of the United States.

### B. Classification: Federal or Territorial Institution?

■ Having concluded that this Court is vested with the jurisdiction to hear appeals from orders of a bankruptcy judge under 28 U.S.C. § 158(a), we must now determine whether there is any authority for a bankruptcy judge appointed and serving in a judicial district of the United States to be designated to serve as a judicial officer of this Court. As recited earlier in this Opinion, 28 U.S.C. § 155(a) provides that a "bankruptcy judge may be transferred to serve temporarily as a bankruptcy judge in any judicial district other than the judicial district for which such bankruptcy judge was appointed . . . ." Also noted previously is the fact that the Virgin Islands is not one of those 'judicial districts' defined by 28 U.S.C. § 451 as one of the districts enumerated in Chapter 5 of Title 28. *See* 28 U.S.C. §§ 81–132. However, if the use of the term 'judicial district' in 28 U.S.C. § 155(a) can be interpreted as referring to a district in which a court exercises federal judicial authority, then the Virgin Islands could be brought within the scope

of that section. In other words, whether a geographic area of the country is a 'judicial district of the United States', and the court established in it a 'court of the United States', could be viewed as depending on the classification or nature of the court, whether it has the nature of a state or territorial court or can be classified as a federal court. Binding Third Circuit precedent holds that the District Court of the Virgin Islands is territorial rather than federal in nature, and thus we are compelled to conclude that this Court cannot be considered a 'judicial district' for purposes of section 155(a). *George*, 625 F.2d 1081. Accordingly, just as a United States bankruptcy judge cannot be assigned to a state court, a bankruptcy judge cannot be temporarily transferred to act as a judicial officer of a nonfederal territorial court.

In *George*, the Court of Appeals was presented with interpreting the meaning of 'court of the United States' as used in 18 U.S.C. § 1503. Section 1503 makes it unlawful to threaten any "officer in or of any court of the United States . . . ." The Court held that the District Court of the Virgin Islands was not a "court of the United States" as used in this statute because "[t]he reference in § 1503 is not to the jurisdiction or powers of the court but rather to its nature as an institution, the classification, federal, state or territorial, into which it falls . . . . [T]he district court [of the Virgin Islands] falls into the territorial rather than the federal classification." *Id.* at 1089.

With the perspective of the 1984 Amendments to the Revised Organic Act and intervening judicial interpretations, certain deficiencies and inconsistencies in the reasoning of the opinion in George seem evident. Omitted from the opinion, for example, is any reference to the first Organic Act of 1917, which provided a temporary government for

---

14. In a footnote to a 1994 opinion the Court of Appeals stated that "[t]he District Court of the Virgin Islands, of course, exercises jurisdiction of the District Court of the United States. 48 U.S.C. § 1612(a)." *In re Kool Mann Coffee & Co.*, 23 F.3d 66, 67 n. 3 (3d Cir.1994). The issue there presented was the validity of this Court's local rule requiring that all appeals of bankruptcy orders be taken directly to the Court of Ap-

peals and not first to the District Court. In the court's discussion leading to its voiding of the local rule, there was no reference to or reconciliation with the other lines of cases set forth in this Opinion. This Court is reluctant to decide the case on such a thin thread, particularly when this specific jurisdictional issue was not litigated in *Kool Mann*. See discussion in part V. *infra.*

the Virgin Islands.[15] All necessary military, civil and judicial power was vested in a governor appointed by the President. Until otherwise provided by Congress, all Danish laws not incompatible with United States sovereignty were continued in effect and administered through the existing judicial tribunals. Appellate jurisdiction over the District Court was vested in the Circuit Court of Appeals for the Third Circuit.[16] The significance of this omission is *George's* failure to recognize the tremendous change in the governance of the Virgin Islands enacted by Congress in the 'second' Organic Act in 1936, and the even greater autonomy and sovereignty granted the Territory under the Revised Organic Act in 1954. *George* gives no significance to the concomitant shift by Congress of the power to appoint the judges of this Court from the Governor of the Virgin Islands to the President of the United States, although the provisions are recited in the opinion. Under the rationale of *George,* this would be like having the judges of the State of New Jersey appointed by the President of the United States.

Some of the statements underlying the *George* conclusion that this Court is classified as a 'territorial court' are analyzed in turn.

> It will thus be seen that the present District Court of the Virgin Islands is the direct successor to the district court which was created for the Virgin Islands by the municipal ordinances of 1921. It is, as the Revised Organic Act plainly indicates, the repository of the judicial power of the Virgin Islands with general original jurisdiction in all but certain minor causes. It is thus clear that it is a territorial court, indeed, the chief court of the territory.

*George,* 625 F.2d at 1088. This statement failed to give any effect to the other provisions contained in the Revised Organic Act in effect in 1980 which set up the structure for a separate court system to handle all local, territorial matters. The statement thus implied that Congress intended the District Court to be, and to remain as, the main adjudicator of all local, territorial questions.

The statement did not reflect the clear intent of Congress to confer on the Territory of the Virgin Islands an autonomy and sovereignty similar to that of the states. Such an intent had been recognized by the author of *George* some fourteen years earlier, namely, that "'the purpose of Congress ... was to creat[e] a government conforming to the American system with defined and divided powers—legislative, executive and judicial....'" *Harris v. Boreham,* 233 F.2d 110, 114 (3d Cir.1956) (citation omitted) (Government of the Virgin Islands is not a 'federal agency' for purpose of Federal Tort Claims Act) Inherent in this system of governance is the dual, federal/state allocation of judicial power under the Constitution. In the federal/state judicial system Congress has adopted for the Virgin Islands, this Court simply is not the 'direct successor' to the court created in 1921 by the two colonial councils and approved by the governor under the first Organic Act of 1917.

*George* also relies on the meaning of the word choice between 'of' and 'for' in the relevant statute. "[T]hat Congress expressly named it the District Court of the Virgin Islands rather than a district court for the Virgin Islands serves to reinforce this view [that this Court is a territorial court]." 625 F.2d at 1088. Such a word choice would seem to have little significance given that the statute that created courts in Alaska before Alaska's statehood used the words 'district court for the District of Alaska,'[17] and that court was nevertheless held to be nonfederal in two Alaska cases relied on by *George.*

---

**15.** *See* Act of Congress, March 3, 1917, ch. 171, 39 Stat. 1132.

**16.** Section 39 of the act of 1948 revising and enacting into positive law The Judicial Code and Judiciary, Title 28, United States Code, deleted the portion conferring appellate Jurisdiction on the Court of Appeals in all cases arising in the Virgin Islands and moved it to Title 28. Act of June 25, 1948, ch. 646, § 39, 62 Stat. 992, eff. Sept. 1, 1948. The revised § 2 of the first Organ-

ic Act, Act of Congress, March 3, 1917, ch. 171, § 2, 39 Stat. 1132, is reprinted in V.I. CODE ANN., Historical Documents, preceding Title 1, 39–44 (as amended) (1995).

**17.** *See* Section 9, Act of June 25, 1948, 62 Stat. 986–87, revision, codification and enactment into law of Title 28, United States Code, entitled "Judicial Code and Judiciary." Act of June 25, 1948, ch. 646, § 9, 62 Stat. 986, *reprinted in* 1948 U.S.C.Cong.Serv. 1641–42.

*Talbot v. McCarrey,* 218 F.2d 565, 566 (9th Cir.1955) (denying writ of prohibition as premature); *United States v. Bell,* 108 F.Supp. 777, 778 (D.C.Alaska 1952) ("For the reason only that this Court is not a 'court of the United States' the indictment [charging violation of 18 U.S.C. § 1503] must be dismissed").[18]

The following appears to contain the only basis which could support the *George* holding that the District Court of the Virgin Islands is a territorial court.

> It is, of course, a court created by act of Congress, under the power to make rules and regulations respecting the territory belonging to the United States given by Article IV, section 3 of the Constitution, but it is not a court of the United States created under Article III, section 1.

*George,* 625 F.2d at 1088–89.

Without providing any legislative history or relying on any precedent from this Circuit or from the Supreme Court for support, *George* found that the reference to 'court of the United States' in the criminal statute it was construing, 18 U.S.C. § 1503, did not involve this Court's jurisdiction, and held that this Court was territorial in nature. 625 F.2d at 1089. One could ask whether the distinction the court drew between the concept of jurisdiction and powers of this Court, on the one hand, and its nature or classification as an institution, on the other hand, is a distinction without a difference.

The problem with attempting such a distinction can be highlighted by noting that the United States Court of Appeals for the Third Circuit is a court which most surely exercises the judicial power of the United States contained in Article III, and yet the United States Court of Appeals just as surely also exercises jurisdiction under Article IV. For example, the jurisdiction in the United States Court of Appeals for the Third Circuit to review the decisions of the District Court's Appellate Division is vested under Congress' Article IV powers. *See* REV. ORG. ACT § 23A(c), 48 U.S.C. § 1613a(c). Under *George* it could be argued that the Court of Appeals is an Article IV court to the extent that Congress has exercised its constitutional powers to provide for the governance of this Territory to confer jurisdiction to review the decisions of the Appellate Division of this Court.

By any analysis, the Revised Organic Act in effect in 1980 at the time George was decided established a District Court in the Territory of the Virgin Islands to perform a dual function under the governmental scheme Congress had enacted for these Islands. If such a court can be considered a 'court of the United States' for purposes of the Labor Management Relations Act, *see Juneau Spruce,* 342 U.S. at 242, 72 S.Ct. at 238–39, it arguably should also be considered a 'court of the United States' for purposes of section 1503. There is no meaningful difference apparent between the words "officer in or of any court of the United States" in section 1503, a criminal statute of national application construed in *George,* and the language of the section of the Labor Management Relations Act allowing an aggrieved party to bring a cause of action for a violation in any district court of the United States construed by the Supreme Court in *Juneau Spruce.*

As noted in the background discussion, just a year before *George,* the author of *George* and *Boreham* had written an opinion applying to the District Court of the Virgin Islands the supervisory power of the United States Court of Appeals for the Third Circuit

---

18. Several decisions on the nature and jurisdiction of the District Court for Alaska, which found that court to be a district court of the United States, are not mentioned in *George,* including a Supreme Court decision, *Ex Parte Cooper,* 143 U.S. 472, 494, 12 S.Ct. 453, 457, 36 L.Ed. 232 (1892). *See, e.g., United States v. Talbot,* 133 F.Supp. 120, 125–26 (D.C.Alaska 1955); *United States v. King,* 119 F.Supp. 398, 404 (D.C.Alaska 1954); *Territory of Alaska v. American Can Co., Inc.,* 117 F.Supp. 819 (D.C.Alaska 1954); *United States v. Barbeau,* 92 F.Supp. 449, 450 (D.C.Alaska 1950). *George* did not acknowledge or attempt to reconcile its holding with these other decisions of the District Court for Alaska which had held that it was a court of the United States. Of course, all of these cases out of Alaska predate its admission as a State of the Union.

In fairness, the opinion also did not cite to another decision similar to the holding in *George, Reese v. Fultz,* 96 F.Supp. 449 (D.C.Alaska 1951).

over federal courts in the Third Circuit.[19] *See Romain*, 600 F.2d at 437. Since this supervisory power can only be exercised over courts of the United States, it would seem to follow necessarily that the District Court of the Virgin Islands must be such a court of the United States for purposes of 18 U.S.C. § 1503, although *George* ruled that it was not. Despite the ruling in *George* that this Court is a territorial and not a federal court, the Court of Appeals nevertheless has used its supervisory power thereafter to impose on territorial causes of action tried in the District Court what the Court of Appeals considered to be salutary provisions of federal law. "Accordingly, we exercised our supervisory power to apply to the Virgin Islands provisions of federal statutes which did not apply by their own terms." *Government of the Virgin Islands v. Bryan*, 818 F.2d 1069, 1074 (3d Cir.1987) (applying the Speedy Trial Act to Virgin Islands Code offenses tried in this Court, although by its definitional terms, the Act only applied to an "offense" defined as "any Federal criminal offense which is in violation of any Act of Congress ...." 18 U.S.C. § 3172(2)).

The Court of Appeals again exercised its supervisory power when it invalidated the local rule of this Court requiring an applicant to live in the Virgin Islands for one year before applying for admission to the District Court bar and to affirm an intention to reside in Virgin Islands thereafter. *Thorstenn v. Barnard*, 842 F.2d 1393, 1396 (3d Cir.1988), *aff'd on other grounds*, 489 U.S. 546, 109 S.Ct. 1294, 103 L.Ed.2d 559 (1989). The court noted that the "District Court of the Virgin Islands is, of course, not a United States district court," but acknowledged that it "exercises exclusive federal jurisdiction in

that Territory under the Revised Organic Act...." *Id.* The court went on to observe that "[g]iven the integrated status of the Virgin Islands in the federal court system," there was no doubt that Supreme Court cases invalidating similar residency rules were binding on this Court. *Id.*

Although the Supreme Court affirmed the result, it repudiated the Court of Appeals' resolution of the issue through the exercise of its supervisory power over federal courts. The Supreme Court instead treated the Territory of the Virgin Islands as a State and resolved the issue as a constitutional one of privileges and immunities under the Fourteenth Amendment. *Barnard v. Thorstenn*, 489 U.S. 546, 551–52, 109 S.Ct. 1294, 1298–99, 103 L.Ed.2d 559 (1989).

Without attempting to define the limits of our supervisory power, we decline to apply it in this case. Both the nature of the District Court of the Virgin Islands and the reach of its residency requirements implicate interests beyond the federal system. As to the former, the District Court, which was given its current form and jurisdiction by Congress in the Revised Organic Act of 1954, is not a United States district court, but an institution with attributes of both a federal and a territorial court.... The application of [the local court] Rule itself similarly extends beyond practice in the federal system [and] applies to admission to the Bar of the Virgin Islands, and so governs practice before the territorial courts.

Because these territorial interests are intertwined with the operation of [the] Rule, we decline to examine this case as an issue of supervisory power.

**19.** Many years earlier, in 1964, a panel of the Court of Appeals which included the author of *Boreham* held that, because

the Virgin Islands are an unincorporated territory of the United States of America and the powers of its government are derived from and set forth in the Revised Organic Act of 1954, those principles inherent in our Federal system requiring due regard for the procedural safeguards devised by an independent, sovereign state government are wholly irrelevant to the formulation and application of proper procedural standards ... [in the District Court of the Virgin Islands.]

*Government of Virgin Islands v. Solis*, 334 F.2d 517, 520 (3d Cir.1964) (applying federal rule of *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) to criminal prosecution of territorial offenses in the District Court). So much for implementing the "aim of Congress ... to give the territory full power of local self-determination" and honoring "the local laws enacted under the legislative power granted by Congress ... [as] territorial laws, not laws of the United States" so carefully set forth and so fully justified in the *Boreham* decision just six years earlier. *See* 233 F.2d at 113–14.

*Id.* (statutory citations omitted). The Court went on to hold that the local district court rule violated the Privileges and Immunities Clause of the Constitution. *Id.* at 558–59, 109 S.Ct. at 1302–03.

One of the clear teachings of the Supreme Court in *Thorstenn* is a judicial recognition of the fact that this Court is "an institution with attributes of both a federal and a territorial court." *Id.* at 551, 109 S.Ct. at 1299. Even accepting the validity of the distinction between a court's jurisdictional power and its institutional nature as propounded in *George*, the District Court of the Virgin Islands thus falls into both the federal and the territorial classification.

Despite the Court of Appeals' acknowledgment in *Thorstenn* of the "integrated status of the Virgin Islands in the federal court system," and despite the Supreme Court's recognition of this Court as "an institution with attributes of both a federal and a territorial court," the United States Court of Appeals for the Third Circuit as recently as 1994 and 1995 has affirmed the District Court of the Virgin Islands' status as a 'territorial' rather than 'federal' court. *United States v. Charles*, No. 94–7334, 60 F.3d 817 (3d Cir. May 19, 1995), *United States v. Cruse*, No. 93–7696, 27 F.3d 559 (3d Cir. May 12, 1994); *see also United States v. Jeremy Galloway*, No. 94–7326, 70 F.3d 1257 (3d Cir. Oct.25, 1995) (extending the scope of *George* to void a prosecution for perjury in the District Court under 18 U.S.C. § 1623(a), relying on the unpublished opinion in *Cruse* ).[20]

*Cruse* and *Charles* involved the prosecution of defendants charged with violations of section 1503, the very statute construed in *George*. In the first case, a Senior District Judge from the Eastern District of Pennsylvania, designated to assist this Court during its judicial emergency, dismissed the indictment, relying on *George*, and was affirmed on

appeal. In the second case, based on some of the considerations set forth herein, the undersigned ruled in a published opinion that "the 1984 amendments to the Organic Act of 1954 altered fundamentally the 'institutional nature' of the District Court of the Virgin Islands, so that it may be regarded as a 'court of the United States' for purposes of 18 U.S.C. § 1503," and was reversed on appeal. *United States v. Charles*, 1994 WL 392480 (D.V.I.1994), *vacated in part United States v. Charles*, No. 94–7334, 60 F.3d 817 (3d Cir. May 19, 1995).

While conceding that the changes since 1980 federalizing the jurisdiction of the District Court of the Virgin Islands "have undermined some of the grounds on which the *George* court relied," the Court of Appeals in *Cruse* "did not feel free as a panel to hold that *George* has in effect been rendered obsolete." Slip op. at 2–3. The *George* opinion was saved from obsolescence by the fact that the "Revised Organic Act still proclaims that the District Court of the Virgin Islands is vested with [t]he judicial power of the Virgin Islands'" and that the origins of this Court "may still be traced to the court that 'was created for the Virgin Islands by the municipal ordinances of 1921'." *Id.* at 3. Despite a listing of four or five other sections of Title 18 rendered nugatory by *George*, the court deferred to an en banc sitting of the court any decision overruling *George*. *Id.* at 3–4. In reversing *Charles*, the Court of Appeals simply stated that *"George* has never been overruled and remains' good law in this Circuit. It is not distinguishable here, and hence applies to this case." *Charles*, slip op. at 2.

■ This Court therefore has no alternative but to treat United *States v. George* as binding precedent in light of its reaffirmation by the Court of Appeals in *Galloway, Charles*, and *Cruse*.[21] Accepting the analysis

---

**20.** While there is at least one other unpublished opinion of the United States Court of Appeals for the Third Circuit which comments on similar problems with the statutory use of 'court of the United States' and 'United States district court', it has not been discussed here because the Court of Appeals has determined such opinions have no value to anyone other than the trial court or the parties, see Third Circuit I.O.P. 5.3, and to *have*

not binding precedent on the court, see Third Circuit I.O.P. 5.8. The unpublished opinions cited here are discussed because they are so clearly oh point, so clearly of value to the trial court and are so recent in time.

**21.** In 1994, the Congress added an amendment to Title 18, United States Code, making the District Court of the Virgin Islands a court of the

of *George,* the reference to 'judicial district' in section 155(a) does not involve the jurisdiction or judicial authority of the District Court of the Virgin Islands, but rather its classification and institutional nature. Because the district court established in the Territory of the Virgin Islands is classified as territorial and institutionally is not federal in nature, the use of the term 'judicial district' in 28 U.S.C. § 155(a) can not be interpreted as including the Virgin Islands. Accordingly, this bankruptcy appeal must be dismissed for lack of subject matter jurisdiction.

## V. JURISDICTION TO REVIEW ORDERS OF A BANKRUPTCY JUDGE HAS NOT BEEN DECIDED BY THE COURT OF APPEALS

■ Appellee Jaritz and intervenor United States have argued that a 1994 decision of the United States Court of Appeals for the Third Circuit precludes this Court from considering the question of its jurisdiction over appeals from the bankruptcy judge under 28 U.S.C. § 158. *In re Kool Mann Coffee & Co.,* 23 F.3d 66 (3d Cir.1994). A close reading of the opinion, however, discloses that, in correcting an erroneous designation of the bankruptcy judge under the Revised Organic Act, the court simply assumed without discussion that 28 U.S.C. § 155(a) applied to this Court. *Id.* at 68. The principle that an unstated assumption which was never raised or litigated in the case is not binding authority was applied by the Court of Appeals for the Third Circuit in *Moravian.*

In *Brow,* we upheld the District Court of the Virgin Islands' order dismissing, for lack of subject matter jurisdiction, an action to enforce an order of the territorial court. In a footnote, we stated that the district court could have elected to transfer the case to the territorial court pursuant to the Virgin Islands transfer provisions at issue here. 994 F.2d at 1037 n. 10. However, because this statement was dictum, we are not bound by it, and decline to follow it inasmuch as it is inconsistent with Rule 12(h)(3).[22]

70 F.3d at 276 n. 1. Since the issue of the court's authority to assign a bankruptcy judge to sit as a judicial officer of the District Court of the Virgin Islands was never raised or litigated in the case, *Kool Mann* is not a precedent which binds this Court in a case in which this question has been raised and is being litigated.[23]

## VI. DECISION IS PROSPECTIVE IN EFFECT

■ The United States is concerned that this Court's decision will have the "unconscionable result" of invalidating the orders of bankruptcy judges over the past several years. Under Supreme Court precedent, this present ruling that the District Court of the Virgin Islands does not have jurisdiction over appeals of decisions of the bankruptcy judge temporarily assigned here has only prospective effect. *See, e.g., Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349,

United States for purposes of federal criminal prosecutions. See Section 320914 of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 2128 (codified at 18 U.S.C. § 23). The fact that the Congress has added another patch to cover the symptom does not redress the fundamental, underlying problem in this civil context.

**22.** Rule 12(h)(3) of the Federal Rules of Civil Procedure states:

Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

**23.** Accord, *e.g., United States v. L.A. Tucker Truck Lines, Inc.* 344 U.S. 33, 37–38, 73 S.Ct. 67, 68–70, 97 L.Ed. 54 (1952) (a decision in which a point is neither raised by counsel or discussed in the court's opinion is not binding precedent);

*Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Grant v. Shalala,* 989 F.2d 1332, 1341 (3d Cir.1993). *See also People of Puerto Rico v. Shell Co. (P.R.) Ltd.,* 302 U.S. 253, 269, 58 S.Ct. 167, 174–75, 82 L.Ed. 235 (1937) (quoting Chief Justice Marshall in *Cohens v. Virginia,* 6 Wheat. 264, 19 U.S. 264, 398, 5 L.Ed. 257 (1821): " 'It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision.' "); *Humphrey's Executor v. United States,* 295 U.S. 602, 627, 55 S.Ct. 869, 873–74, 79 L.Ed. 1611 (1935) (and cases cited)

355–56, 30 L.Ed.2d 296 (1971). The *Chevron* Court listed three factors which a lower court should weigh to determine whether a new rule should be given retroactive application, noting that prospective application may be justified on the basis of two or even one of these factors. *Id.* at 108, 92 S.Ct. at 356. In this instance two of the three factors justify nonretroactive application.

■ The first factor which will cause a decision to be applied prospectively is that it "must establish a new principle of law, either by overruling clear past precedent on which litigants have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Id.* There can be no question that this case decides "an issue of first impression whose resolution was not clearly foreshadowed." It therefore must be applied prospectively. The third factor also supports this decision's nonretroactive effect, namely, whether the decision "could produce substantial inequitable results if applied retroactively." *Id.* Unless it applies prospectively, the new rule of this case would undue cases which have been settled, 'undischarge' parties who have been discharged from bankruptcy, void reorganization plans which have been or are in the process of being fulfilled, require moneys which have been *distributed to be repaid, etc.*[24] This highly inequitable result fully justifies prospective application only.

## VII. CONCLUSION

While this Court may have the equivalent jurisdiction of a United States district court, recently reaffirmed and binding precedent of the Third Circuit Court of Appeals compels the holding that the Territory of the Virgin Islands can not be treated as a judicial district of the United States. This result necessarily follows from the Court of Appeals' rulings that the District Court of the Virgin Islands is classified as a nonfederal, territorial court. Accordingly, the District Court of the Virgin Islands cannot be considered a 'judicial district' for purposes of temporarily transferring a United States bankruptcy judge under section 155(a) to serve as an officer of this Court.

As noted earlier in the background section, II.A., there is no constitutional impediment to Congress establishing a United States District Court in the Virgin Islands and declaring the Virgin Islands as a judicial district of the United States, as it did for the unincorporated territory of Puerto Rico. But for a declaration from Congress that it is an Article III court, the District Court of the Virgin Islands is in fact a United States district court. Moreover, with the growth and maturation of the Virgin Islands government and its Territorial Court, the judicial system parallels that of the state/federal judiciary in the States of the Union. Indeed, the Virgin Islands is no longer merely an 'ephemeral' subdivision of the 'outlying dominion of the United States,' but has progressed through its period of pupilage to achieve a sufficiently permanent form of government to warrant the application of Article III to its district court. *Compare O'Donoghue v. United States,* 289 U.S. 516, 539, 53 S.Ct. 740, 746, 77 L.Ed. 1356 (1933).

It is of course up to the political branches of government to make this Court an Article III court and list the Virgin Islands as a judicial district in Title 28 of the United States Code. Such legislation clarifying the status of this Court would reduce the great amount of wasted effort in determining the special issues of jurisdiction stemming from the fact that this Court is not a court of the United States. The ordinary issues of federal jurisdiction are difficult enough without the additional level presented by the special states of the District Court of the Virgin Islands. The testimony of Circuit Judge Albert B. Maris on the benefits of revisions clarifying ambiguous statutes on the workload of individual judges by reducing the amount of effort wasted on endeavors such as resolving the issues in this case is as true now as it was in 1947.

[A]s long as you have these doubtful questions of overlapping statutes, of ambiguous or archaic statutes, of implied repeal, you

---

**24.** It should be pointed out that bankruptcy judges from other judicial districts have been assigned to assist the District Court of the Virgin Islands only since 1990. Retroactive application would nevertheless have a very inequitable effect on past litigants.

have to consider them. The issues are raised in lawsuits. They must be passed upon. They must be argued by lawyers. They must be decided by judges.

So far as you can eliminate that kind of useless work, you are certainly advancing the cause of the administration of justice and reducing the cost of that work to the litigants, who have to pay for all this.

Hearing before Subcommittee No. 1 of the House Judiciary Committee on H.R. 1600 [to revise Title 18] and H.R.2055 [to revise Title 28], Mar. 7, 1947.

In the meantime, this appeal from an order of a bankruptcy judge must be dismissed for lack of subject matter jurisdiction. The effect of this decision will be stayed for ten days to allow the parties an opportunity to evaluate their appellate options.