**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**IRVINE HODGE, JR., JASON HULL, and DEVIN HODGE,
Defendants**

Crim. No. 1999-006

District Court of the Virgin Islands

Div. of St. Thomas and St. John

September 23, 1999

AUDREY THOMAS-FRANCIS, Asst. U.S. Attorney, St. Thomas, U.S.V.I., *for
plaintiff*

Bernard Van Sluytman, Esq., St. Thomas, U.S.V.I, *for Irvine Hodge, Jr.*, *defendant*

George Hodge, Jr., Esq., St. Thomas, U.S.V.I., *for Jason Hull, defendant*[1]

MOORE, *Judge*

## MEMORANDUM OPINION

The following memorializes the Court's rulings from the bench on certain motions after the hearing on September 10, 1999. Defendant Irvine Hodge, Jr. ["Hodge"[2] ] filed the following motions: for recusal of the undersigned trial judge, to dismiss, to sever, to exclude testimony of prior convictions, and to exclude the eyewitness identification of defendant Hodge. The Court also heard argument and received evidence concerning defendant Jason Hull's ["Hull"] motion to suppress.[3]

## I. DEFENDANT HODGE'S MOTIONS

### A. Motion to Recuse Trial Judge

Hodge argued that several factors required the undersigned to recuse himself from this matter, namely that the undersigned presided over Hodge's jury trial for robbery of the same premises alleged here, sentenced Hodge upon his conviction by the jury for that robbery, was aware of an indictment returned against Hodge in this matter, and heard argument and issued a ruling concerning a sealed matter presently on appeal which involves this matter. The basis for this motion to recuse was 28 U.S.C § 455(a).

■ Notably, Hodge offered only the undersigned's rulings made within the ordinary course of the exercise of judicial duties in support of his motion. "Judicial rulings alone almost never consti-

---

[1] Although defendant Devin Hodge attended the hearing, his attorney, Michael Joseph, Esquire, did not.

[2] Defendant Devin Hodge did not file any motions. Accordingly, all references to "Hodge" refer to Irvine Hodge, unless otherwise specified.

[3] At the commencement of the hearing, defendant Hodge withdrew his subpoena issued to the United States Attorney for the Virgin Islands, James L. Hurd, rendering moot the government's motion to quash that subpoena.

429

tute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 127 L. Ed. 2d 474, 114 S. Ct. 1147 (1994). In order for such judicial rulings alone to warrant recusal, the defendant had to show that the undersigned has displayed some degree of antagonism or favoritism toward the defendant. Hodge made no suggestion that the undersigned has shown any animosity toward him or favoritism toward the government. Accordingly, the Court denied Hodge's motion for the recusal.

## B. Motion to Dismiss

Hodge also moved to dismiss the charges against him for lack of subject matter jurisdiction. The indictment charged Hodge in count I with committing a robbery which interfered with interstate commerce in violation of 18 U.S.C. § 1951 ["Hobbs Act"]. The Hobbs Act makes "whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose"[4] to do so, prosecutable in federal court for a violation of United States law.

Hodge is also charged with two other federal crimes, which both depend on the viability of the Hobbs Act count. Count II, possession of a firearm during the commission of the robbery, 18 U.S.C.

---

[4] The Hobbs Act, 18 U.S.C. § 1951, provides in relevant part as follows:

Interference with commerce by threats or violence

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section —

(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

. . .

(3) The term "commerce" means commerce within . . . any Territory . . . of the United States; all commerce between any point in a . . . Territory . . . and any point outside thereof . . . .

§ 924(c)(1),[5] requires as a jurisdictional predicate a "crime of violence . . . for which the person may be prosecuted in a court of the United States." A Hobbs Act robbery is such a crime of violence. See id. § 924(c)(3). The necessary precondition for federal jurisdiction under the first degree murder charge in count III, 18 U.S.C. § 924(j)(1),[6] is simply the Hobbs Act robbery. *See id.* § 924(j)(1).

Hodge claimed that all three counts of the indictment must be dismissed because this Court lacks jurisdiction over the Hobbs Act, and the other two counts would necessarily fall like dominos without the Hobbs Act's support. As best the Court could understand, Hodge argued that, when Congress passed the Hobbs Act in 1934,[7] it did not intend to give the District Court of the Virgin Islands jurisdiction over criminal conduct which violates the Virgin Islands Code, because at that time crimes that violated the

---

[5] Section 924(c) provides in relevant part:

> (1)(A) . . . Any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . .—
> (i) be sentenced to a term of imprisonment of not less than 5 years;
> . . .
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.
> . . .
> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
> . . . .

[6] Section 924(j)(1) provides:

> A person who, in the course of a violation of [section 924(c)], causes the death of a person through the use of a firearm, shall —
> (1) if the killing is a murder (as defined in [18 U.S.C. § 1111]), be punished by death or by imprisonment for any term of years or for life . . . .
> The federal statute referred to by section 924, 18 U.S.C. § 1111(a) defines first degree murder as

> the unlawful killing of a human being with malice aforethought. Every murder . . . committed in the perpetration of, or attempt to perpetrate, any . . . robbery, is murder in the first degree. . . .

[7] *See* Act of June 18, 1934, ch. 569, §§ 1-6, 48 Stat. 979, 980.

Virgin Islands Code were not prosecutable in the Territorial Court. Indeed, the Territorial Court did not come into existence until 1976.[8]

Hodge does not appear to contest that Congress, when enacting the Hobbs Act, intended to federalize some state crimes because Congress felt that states were not adequately prosecuting certain crimes. *See United States v. Culbert*, 435 U.S. 371, 379-80, 55 L. Ed. 2d 349, 98 S. Ct. 1112 (1978)(describing congressional intent behind passage of Hobbs Act). Rather, the argument seemed to be that, since all crimes in the Virgin Islands, both federal and territorial, were prosecuted in the district court in 1934, Congress did not intend for the Hobbs Act to apply to the Virgin Islands. Furthermore, according to Hodge, the Hobbs Act did not become applicable even when the Virgin Islands Legislature transferred original jurisdiction over all Virgin Islands offenses from this Court to the Territorial Court, as enabled by Congress in the 1984 amendments to the Revised Organic Act.[9] Hodge ultimately seemed to argue that this Court should decline to exercise federal jurisdiction where there is also a territorial statute on point, in order somehow to maintain the appropriate federal-territorial balance.

The defendant attempted to find support for his argument in the legislative history of the Hobbs Act, as discussed in *United States v. Culbert*, 435 U.S. 371, 55 L. Ed. 2d 349, 98 S. Ct. 1112 (1978).[10]

---

[8] *See* V.I. CODE ANN. tit. 4, § 71.

[9] *See* Revised Organic Act § 21(b), 48 U.S.C. § 1611(b). The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1994), reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 1998) (preceding V.I. CODE ANN. tit. 1).

[10] Hodge also tried to attach significance to the holding of this Court that it has the nature of a court of the territory, since it was created under Congress' Article IV power to govern the territories, rather than under Article III of the Constitution. *See In re Jaritz Indus.*, 36 V.I. 225, 207 B.R. 451, 462 (D.V.I. 1997), *rev'd on other grounds*, 151 F.3d 93, 41 Fed. R. Serv. 3d (Callaghan) 499 (3d Cir. 1998). While it may be true that the District Court of the Virgin Islands is not a United States district court established under Article III, the Congress has nevertheless made crystal clear its intent that this Court have all the criminal jurisdiction of an Article III court by amending the federal criminal code to provide "the term 'court of the United States' includes . . . the District Court of the Virgin Islands." *See* 18 U.S.C. § 23.

The defendant's other suggestion that the United States Attorney has violated the United States Attorneys' Manual is similarly without merit. In support of his argument, Hodge cited the Manual's statement that the robbery provision of the Hobbs Act is to be utilized "only in instances involving organized crime or wide-ranging schemes." As the government

Defendant Hodge's argument is supported by neither the language of the Hobbs Act itself nor the Supreme Court's Culbert decision. The Hobbs Act defines "commerce" to mean "commerce within . . . any Territory . . . of the United States." 18 U.S.C. § 1951(b)(3). This is in accord with the obvious fact that the Virgin Islands is not a state. All commerce within the Territory, therefore, is interstate commerce. There can be, by definition, no intrastate commerce within the Territory of the Virgin Islands. Clearly, then, under the Hobbs Act, Congress intended to allow federal prosecution of interference with commerce by robbery in the territories.

■ Moreover, in 1978, the Supreme Court in Culbert specifically recognized and approved what defendant Hodge, and others before him, have criticized as rampant "federalization" of local crimes.

> With regard to the concern about disturbing the federal-state balance, moreover, there is no question that Congress intended to define as a federal crime conduct that it knew was punishable under state law. The legislative debates are replete with statements that the conduct punishable under the Hobbs Act was already punishable under state robbery and extortion statutes. Those who opposed the Act argued that it was a grave interference with the rights of the States. Congress apparently believed, however, that the States had not been effectively prosecuting robbery and extortion affecting interstate commerce and that the Federal Government had an obligation to do so.

435 U.S. at 379-80. As acknowledged and upheld by the Supreme Court, Congress intended the Hobbs Act to be used to "federalize" criminal acts that are otherwise "purely local" in nature, assuming, of course, there is the federal jurisdictional nexus, e.g., interference

---

noted in its pleading, however, the Manual provides only guidance. "It . . . may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigative prerogatives of the Department of Justice." UNITED STATES ATTORNEYS' MANUAL § 1-1-100. As discussed previously, Hodge is charged with a crime that clearly falls within the purview of the Hobbs Act. Accordingly, the grand jury properly included count I in the indictment.

with interstate commerce, or in the Virgin Islands, interference with any commerce at all within the Territory. As much as Hodge, other defendants prosecuted in this Court for crimes which could also be handled in Territorial Court, and others in the legal community may not want to accept it, the Congress of the United States has given this Court the full criminal jurisdiction of a United States district court, which includes prosecutions under the Hobbs Act. The Court therefore denied the motion to dismiss.

## C. Motion to Sever

Hodge also requested that the Court sever his trial from that of his co-defendant, Jason Hull. Pursuant to Federal Rule of Criminal Procedure 14 and the holding in *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968), Hodge requested the severance because of the possibility that the government may introduce at trial statements of Hull which are "prejudicial to defendant" Hodge. *Bruton* requires that the trial of a co-defendant be severed if statements of a nontestifying defendant directly implicate a co-defendant as a participant in the crime, because to try them together would violate the Confrontation Clause.[11] *Id.* at 201. In a later case, the Court made it clear that the admission of a statement of a nontestifying co-defendant does not violate the Confrontation Clause if the statement can be redacted to eliminate any direct implication of a co-defendant joined for trial. *See Richardson v. Marsh*, 481 U.S. 200, 211, 95 L. Ed. 2d 176, 107 S. Ct. 1702 (1987).

■ The unredacted statement of Hull does on its face appear to implicate Hodge. The prosecutor acknowledged the problem and advised the Court that it believed the statement could be redacted to satisfy *Bruton*. Accordingly, the motion to sever was denied without prejudice.

## D. Motion to Exclude Evidence Prior Conviction

Hodge sought to preclude the government from introducing any evidence concerning his conviction for robbery of the same jewelry

---

[11] The Confrontation Clause is made applicable to the Virgin Islands by section 3 of the Revised Organic Act, 48 U.S.C. § 1561.

store that is the site of the alleged crime in this prosecution. The Court found that this motion was premature, as the government has not resolved several issues concerning the crimes charged. Since the government's decisions in these matters may affect whether evidence of Hodge's prior conviction may be admitted, the Court denied without prejudice the motion to exclude evidence of his earlier conviction.

## E. Motion to Exclude the Witness Identification

Although not included in the written motions Hodge filed with the Court, the Court nevertheless heard his oral motion to suppress the pretrial identification of Hodge by several witnesses. Hodge was identified from a six-photograph array by several witnesses as a person seen near the scene of the murder and robbery at the Emerald Lady jewelry store on the day and near the time of the alleged crimes. Hodge complained that the photographic array containing the color photographs of six male individuals shown to the witnesses was unduly suggestive and unreliable. Specifically, he argued that the men in the other five photos possessed markedly different facial features and that he was the only one wearing a light blue shirt, all of which made his photo stand out from the other five.

The Court must evaluate these identifications in "light of the totality of the surrounding circumstances." *Simmons v. United States*, 390 U.S. 377, 383, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). The first step in the Court's analysis was to consider whether the array was unduly suggestive. Only if the Court had found that the array was unduly suggestive, was it required to go on to evaluate whether the array was unreliable. *See Neil v. Biggers*, 409 U.S. 188, 199, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972).

After hearing the testimony of several officers stating how the photographic array was put together and shown to witnesses, as well as the Court's own review of the color photographs in the array, the Court found that the array was not impermissibly suggestive. Although photograph number three was blurry, it showed a somewhat darker oblong face, which looked quite similar to number four, defendant Hodge's picture. The subject of photograph number one had the same sort of oblong face, with

435

similar eyes and nose and somewhat different lips from those of Hodge. On number two, the eyes were a little different but the general shape of the face, and the lips and skin coloring were quite similar to number four.

Number five was probably the most different from all the other photos. In terms of facial characteristics, the cheekbones were much more pronounced and the face narrowed down to the chin area; almost an inverted triangle. The eyes and hair were quite different, and the face was much longer than any of the others. Thus, if anything, just going from its facial features, number five was the most suggestive of the six photographs.

The hair on number six was a little different, but his general facial features were quite similar to those of defendant Hodge. Number one was the only one wearing a chain and his shirt was very distinctive, with a white collar with a maroon or reddish stripe on a dark blue or black basic shirt. Mr. Hodge's shirt, in number four, also had a collar and looked to be made of the same kind of material. The Court could not tell, between number two and number three, whether or not they were wearing tank tops. Number two looked like there may be another shirt underneath with a stripe on it. Number five had a narrow "V" and number six's shirt had a much wider and deeper "V." Both number six and number five were wearing white shirts. Thus, number four was not the only photo with a different shirt, although it was the only light blue shirt.

■ Accordingly, the Court found that the photographic array shown to various witnesses was not impermissibly suggestive, making it unnecessary for the Court to apply the *Biggers* analysis for reliability. Hodge's motion to suppress the pretrial identifications based on the color photographic array was denied.

## II. DEFENDANT HULL'S MOTION TO SUPPRESS

Hull was arrested and released on May 8, 1998, the day the alleged crime in this matter was committed, and later released. Hull traveled to the Caribbean island of St. Kitts, where he was arrested in November of 1998, and sentenced to one month in jail for simple possession of marijuana. Virgin Islands Police detectives Darren Foy and Curtis Griffin, Sr., met with and interviewed Hull

on November 23, 1998, while he was still in the custody of the St. Kitts authorities. During the course of this interview, Detective Foy read Hull his constitutional rights using the usual Federal Bureau of Investigation "Advice of Rights" form, and then gave Hull the form to read. Foy testified that Hull acknowledged that he understood each of his rights and agreed to talk to the detectives. Hull then signed a line on the advice of rights form, where it recited that he understood his rights, agreed to talk to the detectives, and waved his right to counsel. Hull also signed and initialed each page of a written statement detailing his involvement in the crimes with which he is here charged. Hull sought to suppress this statement.[12]

In support of his motion, Hull argued that Foy and Griffin acted improperly and mislead him by announcing they were there to arrest him, although no arrest warrant was issued until December of 1998. Hull further claimed that Foy and Griffin improperly influenced him by attempting to gain his trust by talking about family members, promising that the prosecutor would be lenient if he cooperated, informing him that Devin Hodge was prepared to "talk" and that Irvine Hodge was about ready to "talk," and finally, assuring him that no one would know about their conversation. As a result of all these factors, Hull argued that his confession was involuntary and coerced.

In addition to Detectives Foy and Griffin, the Court heard testimony from defendant Hull. Hull claimed that the detectives failed to include in the recitation of his constitutional rights the clause "You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning." Hull acknowledged on cross examination, however, that the officers did advise him that he had the right to remain silent, that anything he said could be used against him in court, that a lawyer would be appointed for him if he could not afford one, and that, if he decided to answer questions at that time without a lawyer present, he could stop the interview at any time

---

[12] Hull executed a second advice of rights form at the St. Kitts airport on December 24, 1998. Hull did not address the validity of this second form during oral argument. The Court found that Hull also knowingly waived his rights when signing the December form and voluntarily spoke again with Detective Griffin, as well as an FBI agent.

and request a lawyer at any time. Hull also claimed that he had given and signed the statement before the officers read him his rights and he signed the waiver of rights.

■ The Court found the testimony of Hull to be totally incredible and unworthy of belief. His testimony was contradicted by the time handwritten on the Advice of Rights form, "10:20 a.m.," and the time written on the statement, "1:10 p.m.," three hours after he waived his rights. The Court found the testimony of the officers credible and that Foy had read Hull the entire advice of rights form, which he gave Hull to review and which Hull then signed as waiving those rights. After reviewing the totality of the circumstances, the Court found that there was no evidence that Hull's will was overcome or that he was somehow psychologically coerced into confessing. The Court held that Hull was properly advised of his rights and that he knowingly and voluntarily waived those rights. Accordingly, the Court denied Hull's motion to suppress his statements.

## III. CONCLUSION

Having considered the contentions of defendants Hodge and Hull in their respective motions, and having found these motions to be without merit, the Court, for the reasons recited from the bench, and as supplemented herein, denied the motions. Defendant Irvine Hodge, Jr., may renew his motions to sever and to exclude his prior conviction if circumstances so warrant. An appropriate order is attached.

### ORDER

For the reasons set forth in the accompanying memorandum of even date, it is hereby

ORDERED that defendant Irvine Hodge's motion to recuse the trial judge, motion to dismiss, and motion to exclude the eyewitness identification of defendant Hodge are DENIED;

ORDERED that defendant Irvine Hodge's motions to exclude evidence of his prior conviction and to sever are DENIED WITHOUT PREJUDICE;

ORDERED that defendant Hull's motion to suppress is DE-NIED.

ENTERED this 23d day of September, 1999.